■ NEIL A. SALONEN et al., Appellants, v PETER BARBELLA, Respondent. —In an action to recover damages pursuant to article 4 of the Civil Rights Law, the plaintiffs appeal from an order of the Supreme Court, Westchester County, dated January 5, 1978, which granted the defendant's motion for

summary judgment. Order reversed, on the law, with $50 costs and disbursements, and motion denied. The defendant, Peter Barbella, is a member of the Board of Trustees of the Village of Tarrytown. On March 2, 1977, acting in his individual capacity, the defendant filed an affidavit with the clerk of that village challenging the eligibility of 93 named individuals to vote in 1977 local elections (see former Election Law, § 398). Virtually all of these 93 individuals were members of the Unification of World Christianity Church (Unification Church), a religious organization that apparently owns a substantial amount of real property in and around the Village of Tarrytown. The ground alleged for the voter registration challenge was that each of these 93 registrants was "a temporary and occasional occupant of property owned by the Unification Cult and is not complying with the residency requirements of the Village of Tarrytown", i.e., three months. Upon being notified by the clerk that their voter registration credentials had been called into question, 33 of the individuals came forward and submitted affidavits attesting to the *bona fides* of their voter eligibility, specifically a valid residence (see former Election Law, §§ 171, 172). Each of the 33 individuals were certified as being eligible to vote, and 32 of them actually voted in the subsequent March, 1977 village election. Thereafter, on March 14, 1977, 31 of the 33 individuals commenced the instant action (the other two individuals were added as plaintiffs at a later date) in the Supreme Court, Westchester County, seeking monetary damages pursuant to sections 40-c and 40-d of the Civil Rights Law. The verified complaint alleged that all the plaintiffs were members of the Unification Church; that the defendant had "without just cause or legal excuse" challenged their voter registration qualifications pursuant to section 398 of the former Election Law; that such challenge was wrongful because it had been undertaken for the sole purpose of depriving the plaintiffs of their right to vote on the basis of their religious affiliations; and that such conduct constituted actionable discrimination within the meaning of the Civil Rights Law. The verified answer asserted, *inter alia,* that the defendant had fully complied with the provisions of section 398 of the former Election Law in that "he had reason to believe that the plaintiffs were transient occupants" of the village. Further, the defendant raised the defense of absolute privilege. The defendant moved in April, 1977 to dismiss the complaint for failure to state a cause of action (see CPLR 3211, subd [a], par 7), predicated upon the two defenses asserted in his verified answer. Special Term held essentially that the complaint stated a viable cause of action at this stage of the pleadings inasmuch as the privilege accorded to one filing a section 398 challenge was only *qualified.* That is to say, should the plaintiffs establish that the defendant was motivated by malice in filing his voter registration challenges, the former would prevail. Thereafter, in August, 1977, the defendant moved for summary judgment (see CPLR 3212). In support of his motion, the defendant attached as an exhibit a 74-page transcript of an examination before trial of Robert Wilson, an official of the Unification Church. Although the 1976 examination had been held in connection with a totally unrelated lawsuit (see *Village of Tarrytown v Unification of World Christianity,* Supreme Ct, Westchester County [Index No. 9429/76]), the defendant had been present as an official of the village. During the course of this examination, the church official was questioned at great length as to the uses that the church made of its substantial Tarrytown properties, and particularly, as to the *transient* nature of many Unification Church members in the village. It was established that a large percentage of newer church members failed to stay in Tarrytown for three months, the period of time necessary to establish a valid residency for

voting purposes. However, it was simultaneously established that a large percentage of other church members, the so-called "permanent staff", stayed in Tarrytown for periods of six months to two years and hence were eligible to vote. The transcript was appended to the defendant's motion papers to show that he had actual "reason to believe" that all the plaintiffs were mere transient members who probably could not vote, and hence to dispel the element of malice or bad faith, Special Term accepted this reasoning, holding essentially that the defendant had complied with the terms of section 398 of the former Election Law in that his actual knowledge that *some* church members were transient gave him good faith "reason to believe" that *all* members of the church were ineligible to vote. Hence the court found that no question of fact had been raised sufficient to warrant a trial as to whether the defendant exceeded the qualified privilege accorded by section 398. An order was then entered granting summary judgment in the defendant's favor. The plaintiffs now appeal from that order. We believe that the pleadings raise questions of fact sufficient to warrant a trial and hence, the order must be reversed. At the outset, we note that the plaintiffs' denomination of their cause of action as one flowing from a "civil rights" violation is tenuous at best. At no time was the defendant ever in any position to actually prevent the free exercise of the right to vote by the plaintiffs. This action is thus distinguished from a civil right suit in the traditional sense where the defendant has actually prevented the exercise of a civil right (see, e.g., *Katzenbach v McClung,* 379 US 294 [defendant's refusal to serve food based upon race discrimination]; *Reynolds v Sims,* 377 US 533 [State action which infringed upon voting rights]; *Loving v Virginia,* 388 US 1 [State action which infringed upon the free exercise of marriage]). The most that the defendant could do was to invoke the statutory mechanism of section 398 of the former Election Law by which the voter registration *bona fides* of the plaintiffs would be subjected to re-examination and recertification by an impartial board of elections. Nevertheless, an attempt was made to deny the plaintiffs the right to vote, and if it was done without a reasonable basis, a cause of action should lie under the Civil Rights Law, if only for nominal damages. Section 398 of the former Election Law (now replaced by Election Law, § 5-220) provides that "Any person may challenge the registration of a voter by executing before and delivering to a central registration board his affidavit that he has *reason to believe* such voter's registration should be cancelled" (emphasis supplied). The clear, unambiguous language of the statute affords a qualified privilege to one invoking the challenge, and renders one immune from civil liability to the extent that he has an articulable "reason to believe" such person is not properly registered to vote (see *Toker v Pollak,* 44 NY2d 211, 222). We disagree with Special Term as to what constitutes "reason to believe". The statute further provides that "Each such [challenging] affidavit shall be directed toward the challenge of *only one* registrant" (emphasis supplied). The latter sentence clearly evinces a legislative intent that the person invoking the challenge have "reason to believe" as to each, specific individual person challenged, and not merely have general, over-all, unsubstantiated "reason to believe" as to an entire class of individuals. In the case at bar, there is no dispute that the defendant knew that *some* members of the Unification Church remained in Tarrytown only temporarily. Yet, as a general rule, this should not provide a lawful basis to challenge all of the members of the church since the defendant clearly had no "reason to believe" that *all* of the members were transient. Thus, the pleadings reveal a genuine issue of fact as to whether the defendant had a "reason to believe" that each specific

individual plaintiff was, in fact, a transient, and therefore ineligible to vote. If it is not established that the defendant had "reason to believe" as to specific registrants, the defendant may nevertheless escape liability by demonstrating the reasonableness of his methods. The defendant has implicitly admitted that he was forced to resort to a "blunderbuss" challenge to *all* members of the church residing on certain church-owned property inasmuch as the church is a "closed society" and therefore he could not have ascertained the eligibility of specific individual members in any other manner with reasonable diligence. In effect, the defendant argues that his blunderbuss method of challenge was the *only* reasonable method he could have utilized in light of the highly unusual circumstances of this case, and should thus be protected. Section 398 of the former Election Law embodies a legislative policy which allows, and by implication encourages, individuals to challenge other persons who may not be eligible to vote. In granting such a statutory right of challenge, the statute must logically protect the challenger in conducting an investigation in a reasonable manner. However, we believe that the "reasonableness" of resorting to a blunderbuss method is a question of fact for the jury. Should the blunderbuss method prove to have been the only reasonable course in the unusual circumstances of this case, it would constitute a complete defense to liability notwithstanding the defendant's lack of knowledge as to the individual registrants. His right to a reasonable challenge under section 398 should not be sacrificed on account of the self-imposed life style of the plaintiffs, which renders it virtually impossible for an outsider to ascertain which of them are actually residents of the village. Martuscello, J. P., Titone and Rabin, JJ., concur; Hawkins, J., dissents and votes to affirm the order on the opinion of Mr. Justice Dickinson at Special Term.