STILSING ELECTRIC, INC., Respondent, v HAROLD JOYCE, Appellant.

Third Department, December 5, 1985

### APPEARANCES OF COUNSEL

*Dominick Tocci* for appellant.

*Tobin & Dempf (David A. Ruffo* of counsel), for respondent.

### OPINION OF THE COURT

KANE, J. P.

Plaintiff, a corporation which is engaged in electrical contracting work and which employs nonunion employees, has an apprenticeship training program registered with the State Department of Labor (DOL) *(see,* Labor Law art 23; 12 NYCRR 600.1-600.19, 601.1-601.14). During the time that they are employed by plaintiff, apprentices in the program take instruction at Hudson Valley Community College (HVCC) *(see,* Labor Law § 815 [3]). Plaintiff pays for this instruction and

pays the apprentices for work done on the job. Plaintiff also arranged and had approved by the State Department of Education (see, Labor Law § 812), a special in-house program in June 1981. Plaintiff has an employee to supervise the apprenticeship program, and has purchased reference books to supplement its in-house program.

Defendant is a duly elected business manager of the International Brotherhood of Electrical Workers, Local Union No. 724 (Local 724). As an officer, he represents Local 724 members in all matters relating to wages, hours and working conditions. Defendant is also a representative to the Electricians Joint Apprenticeship Committee (JAC), which is sponsored by Local 724. His duties as a JAC representative include monitoring and investigating apprenticeship programs.

In the spring of 1981, defendant began an investigation of several apprentice programs operated by electrical contractors. DOL informed him that plaintiff had four apprentices registered in its program. Upon checking with HVCC, however, he learned that only one apprentice was actually attending classes. DOL then informed defendant that plaintiff had only two apprentices; one was currently attending HVCC and the other apprentice would be enrolled during the summer. Defendant, accordingly, dropped his investigation. He resumed his investigation, however, in January 1982, when he discovered that the apprentice was not attending school but was attending an in-house training program. Defendant believed at the time that the in-house program was a substitute for the HVCC instruction instead of a supplement and, as such, did not comply with State requirements. Further investigation revealed that only 3 of a total of 14 apprentices had completed plaintiff's program since its inception in June 1968,[1] and that several of the apprentices had quit or been laid off prior to their completing the program. These facts indicated to defendant that "perhaps the spirit and intent of the New York State Labor Law concerning the apprenticeship program was being circumvented".

On January 6, 1982, defendant filed a complaint with the Director of the Bureau of Employability Development and, on January 12, 1982, wrote a letter on Local 724 letterhead to the State Apprenticeship Training Council requesting that plaintiff's program be investigated. As a result of defendant's

---

1. DOL statistics indicate that an average of 60% of apprentices Statewide complete the program.

complaint and the January 12 letter, G. Earl Hay, Chief of the Bureau of Trade, Technical and Health Occupations Education of the Department of Education, reviewed plaintiff's program as provided by Labor Law § 812. He concluded that it was "in complete compliance with the regulations for apprenticeship related instruction".[2] Defendant was not satisfied with Hay's conclusions, in part because Hay did not evaluate the operation of the program over the preceding 10 years and in part because defendant believed that plaintiff had come into compliance as a result of defendant's complaints. Defendant wrote a second letter on February 9, 1982 to the Commissioner of Labor to request that a hearing be held concerning plaintiff's compliance. A hearing in conformance with 12 NYCRR 601.9 was then ordered and subsequently held. In due course, the Commissioner adopted the hearing panel's recommendation and dismissed defendant's complaint.

Plaintiff then commenced the present action, claiming that it was defamed by the written statements in defendant's letters of January 12, 1982 and February 9, 1982, and by oral statements made by defendant at the hearing. Plaintiff alleges that defendant's defamatory statements injured it by preventing it from securing awards for successful bids in contracts with the County of Albany on two separate projects. Defendant moved for summary judgment on the ground of absolute privilege. Special Term denied the motion, finding that, at best, defendant was entitled to a qualified privilege and that issues of fact existed with respect to plaintiff's allegation of malice. When Special Term received letters from counsel seeking elucidation of its decision, it treated these letters as a motion to reargue, and, upon reargument, adhered to its original decision. This appeal ensued.

The question raised on this appeal is whether an absolute or qualified privilege should be granted defendant, as plaintiff concedes that defendant is at least entitled to a qualified privilege. Defendant's claim to an absolute privilege stems from cases where some proceedings held by administrative agencies have been termed quasi-judicial and, consequently, communications have been afforded an absolute privilege *(see,*

2. It should be noted that Hay's determination refers to defendant's complaint being made in his status as County Legislator. Since the special damages alleged here by plaintiff consist of the loss of contracts with the County of Albany, ethical questions are raised with respect to defendant's conduct as a County Legislator. Such issues are not pertinent to this defamation action.

*Toker v Pollak,* 44 NY2d 211, 222). As the court noted in *Park Knoll Assoc. v Schmidt* (89 AD2d 164, *revd on other grounds* 59 NY2d 205), there is no clear definition of what constitutes a quasi-judicial proceeding during which pertinent communications are afforded an absolute privilege. However, in *Park Knoll,* the Second Department did set forth the accepted general rule as follows: "The shield of absolute immunity extends to the proceedings of administrative agencies where such proceedings are adversarial, result in a determination based upon the application of appropriate provisions in the law to the facts and which are susceptible to judicial review * * * It attaches to 'every step' thereof until final disposition (Prosser, Torts [4th ed], § 114, p 780), including situations in which 'voluntary action by the citizen is a preliminary to a statutory proceeding' * * * Further * * * in deciding whether the communications under review should be afforded an absolute privilege, our inquiry must not only consider the particular characteristics of the proceeding in which they were made, it must also focus upon the particular policy considerations attendant upon such grant (see *Julien J. Studley, Inc. v Lefrak,* 50 AD2d 162, 165 * * *)" *(supra,* at pp 171-172; *see also, Toker v Pollak, supra; Missick v Big V Supermarkets,* 115 AD2d — [decided herewith]).

Applying the above guidelines to this case, we conclude that the communications at issue were entitled to an absolute privilege. The notice of hearing issued herein stated that the hearing was ordered pursuant to 12 NYCRR 601.9. Such regulation provides that "[t]he complainant, and every party to the proceeding shall have the right to counsel, and a full opportunity to be heard, including such cross-examination as may be appropriate in the circumstances" (12 NYCRR 601.9). Indeed, DOL subpoenaed witnesses and documents and the parties participated in the hearing and challenged each other's allegations. Moreover, such proceeding could have resulted in due course to the deregistration of plaintiff's apprenticeship program (12 NYCRR 601.7 [b], [c]-601.12), a determination which would be subject to judicial review (CPLR art 78). We do not find compelling plaintiff's argument that the proceeding is not quasi-judicial since the Commissioner, rather than the hearing panel, makes the ultimate administrative decision. The practice followed here is not dissimilar to the procedure utilized in other situations where the procedures were found to be quasi-judicial *(see, Wiener v Weintraub,* 22 NY2d 330; *Marino v Wallace,* 65 AD2d 946, *lv denied* 48 NY2d

603; *Julien J. Studley, Inc. v Lefrak,* 50 AD2d 162, *affd* 41 NY2d 881, *supra).* Quite simply, the hearing panel here was acting as an arm of the Commissioner and the fact that the hearing panel does not render the final determination upon defendant's complaint does not mandate a finding that the procedure followed here was not quasi-judicial *(see, Wiener v Weintraub, supra,* pp 331-332; *Julien J. Studley, Inc. v Lefrak, supra).*

We now focus on the public interest involved. In this regard, DOL has set up regulations concerning apprenticeship programs (12 NYCRR part 601). These regulations set up a procedure for registration and deregistration. A sponsor (12 NYCRR 601.3 [e]) must draw up an apprenticeship program which meets the standards set forth in 12 NYCRR 601.5 and register this program with the Commissioner (12 NYCRR 601.4). "Any person, firm, corporation or labor organization" may file a complaint alleging that a registered apprenticeship program is not operating in compliance with Labor Law article 23 or the pertinent regulations (12 NYCRR 601.11 [a]).

Since defendant was specifically given standing to file a complaint, we find that public policy surrounding the Labor Law favors granting defendant an absolute privilege. Such finding conforms with the legislative intent found in Labor Law § 215 *(see also,* 12 NYCRR 601.11). As stated in an analogous situation: "In granting * * * a statutory right of challenge, the statute must logically protect the challenger in conducting an investigation in a reasonable manner" *(Salonen v Barbella,* 65 AD2d 753, 756).

Defendant's letters and testimony were presented in a reasonable manner. They were limited to the complaint, contained no overbroad language and were directed to a small group of persons who could correct any violation that might have occurred. Assuredly, it is in the public interest to encourage those who have knowledge of a registered program's noncompliance with the Labor Law to impart that knowledge to the proper officials *(see,* 12 NYCRR 601.1, 601.11). For all the above reasons, we conclude that defendant is entitled to an absolute privilege. Having reached this determination, we need not address the issue of the sufficiency of plaintiff's assertion of malice.

The orders should be reversed, defendant's motion granted, and the complaint dismissed.

YESAWICH, JR., LEVINE and HARVEY, JJ., concur with KANE, J. P.; CASEY, J., concurs in the result only.

Orders reversed, on the law, without costs, motion granted and complaint dismissed.