■ RONALD V. MISSICK, Appellant, v BIG V SUPERMARKETS, INC., et al., Respondents.—Kane, J. Appeal from an order of the Supreme Court at Special Term (Cerrito, J.), entered November 26, 1984 in Saratoga County, which granted motions by various defendants for summary judgment dismissing the complaint.

Plaintiff commenced this action for defamation against his former employer, Frito-Lay, Inc. (Frito-Lay). Also named as defendants were Big V Supermarkets, Inc. (Big V), a long-time customer of Frito-Lay, and seven individuals who are current or former employees of one or the other of the corporate defendants. In this action, plaintiff sought to recover money damages for losses allegedly sustained as a result of an occurrence in December of 1979 at a grocery store which was operated by Big V.

On December 19, 1979, plaintiff was employed as a route salesman for Frito-Lay. He had been employed in that capacity for approximately 3½ years; for 1½ years prior to the December 19, 1979 incident, plaintiff had serviced, on behalf of Frito-Lay, the Shop Rite grocery store in the Town of Colonie, Albany County, which was operated by Big V (the Colonie store). On the day in question, plaintiff made a service call at the Colonie store where he was to restock the inventory of Frito-Lay products. As was his regular practice, plaintiff, upon arriving at the store, initially examined the Frito-Lay racks and wrote out an order to replace those products which had been sold. He then returned to his delivery truck to obtain the necessary items so as to replenish the shelves. At that point, standard procedure was for the salesperson to contact the security clerk at the Colonie store and have him compare the incoming inventory with the sales invoice which had been prepared by the route salesperson.

Defendant Kevin Wippich, the security receiver for the

Colonie store, was in the employees' lounge area of the warehouse at the time plaintiff reentered the store with the necessary items. Plaintiff met Wippich in the lounge and had some coffee with him before proceeding to discharge his other duties. Upon their return to the reception area, plaintiff and Wippich encountered defendant Robert Cozasta, who facetiously chastised plaintiff for leaving his sales invoices unattended.

Immediately thereafter, Wippich and plaintiff began to compare the products against the prepared invoice. Wippich soon discovered that a "1" had been placed in front of the number "45", indicating that the quantity of a product delivered was 145 units instead of the actual 45. Plaintiff candidly admitted that this error was in fact present on the order and undertook to correct it. Wippich, however, also uncovered an overcharge in the amount of $70. Citing problems with his calculator, plaintiff returned to his truck where he prepared a new sales invoice. However, Wippich noted an error on his review of the newly prepared order; namely, that plaintiff had moved the $70 overcharge from one item to another. After this error was shown to plaintiff, the second order was destroyed and discarded. Plaintiff thereupon returned to his truck and then provided Wippich with a third invoice which Wippich accepted as correct.

Once plaintiff left the store, Wippich reported the details of the incident to the assistant manager of the Colonie store, defendant John Twardowski. Twardowski then reported the matter to the security supervisor for Big V, defendant Terry Del Monte. Pursuant to his duties, Del Monte spoke with both Twardowski and Wippich about the incident. As a result of these discussions, Del Monte prepared and submitted a report of the incident to one of his supervisors, defendant Richard Dodd, who is the director of grocery, bakery and merchandising for Big V. The focus of the report concerned the errors present in the invoice.

On or about December 28, 1979, Dodd contacted defendant John Rotach, the regional sales manager for Frito-Lay, and informed him of the contents of Del Monte's security report. Based on this report and its underlying investigation, Dodd recommended that it would be preferable for plaintiff not to service the Colonie store. After his conversation with Dodd, Rotach discussed the matter with defendant Henry Thomas Dommery, who was plaintiff's immediate supervisor, and instructed him to investigate the matter. Dommery conducted an investigation and reported back to Rotach essentially the

same information which Dodd had conveyed to Rotach earlier that day. As a result, Rotach and Dommery met with plaintiff and informed him of the security report and the results of their investigation. They also reported to plaintiff that the stated preference for the Colonie store was that plaintiff no longer service that account. During this conversation, plaintiff once again admitted that there had been an error in the order, but denied having made that or any other change on the sales ticket. Subsequently, on January 7, 1980, Rotach and Dommery met with plaintiff and gave him the choice of resigning or being terminated. At that time, plaintiff was informed that if he chose not to resign, he would be terminated, not for dishonesty, but for having lost the ability to service the major account on his route, thus rendering it economically unviable. Shortly thereafter, plaintiff, through his attorney, informed Rotach of his choice not to resign.

After his termination, plaintiff commenced a racial discrimination proceeding before the State Division of Human Rights. After Big V was notified of this proceeding, Erwin J. Fox, the vice-president of employee relations for Big V, requested that the employees involved in the incident with plaintiff prepare written statements for submission to the Equal Employment Opportunity Commission (EEOC). As a result, Fox received written statements from Cozasta, Wippich and Twardowski. These statements were provided to Big V's legal counsel for use in the discrimination proceedings.

Similarly, after plaintiff's termination, Rotach decided to have a personal meeting on January 25, 1980 with Shop Rite employees Wippich and Del Monte. Rotach wanted to hear, in person, Wippich's version of the events in question and to explore whether he would be available and willing to testify, if necessary, at a hearing involving the discrimination charges. Wippich again recounted to Rotach the same basic story of the events of December 19, 1979.

After receiving the security report of Del Monte in conjunction with the statements made in preparation for the hearing before the EEOC, plaintiff commenced this action against defendants for libel and slander. After discovery was completed, each of the defendants, with the exception of Dommery, made motions for summary judgment. Special Term granted the motions and dismissed the complaint against all of the defendants. The court held that statements made in preparation for or during the course of the proceeding before the State Division of Human Rights were absolutely privileged. Turning to the remaining statements made by defen-

dants, Special Term concluded that such statements were made by each of the defendants in good faith regarding a subject matter in which each had an interest. Therefore, Special Term concluded that defendants were entitled to a qualified privilege and, as plaintiff had failed to submit any proof of malice, the court dismissed each of the causes of action based on these statements. This appeal by plaintiff ensued.

In our view, there must be an affirmance. Statements made during or for judicial proceedings, if pertinent, are absolutely privileged and cannot be used later in an action alleging defamation *(Resciniti v Padilla,* 72 AD2d 557, 558). This rule also encompasses communications made in the course of quasi-judicial or administrative proceedings *(see, Wiener v Weintraub,* 22 NY2d 330; *Marino v Wallace,* 65 AD2d 946, *lv denied* 48 NY2d 603; *Julien J. Studley, Inc. v Lefrak,* 50 AD2d 162, 164, *affd* 41 NY2d 881; *Stilsing Elec. v Joyce,* 113 AD2d 353). The requisite criteria are present for applying this rule to the proceedings before the State Division of Human Rights in the instant case, and any statements made during or in preparation for said proceedings are protected by an absolute privilege *(Toker v Pollak,* 44 NY2d 211; *see, Park Knoll Assoc. v Schmidt,* 89 AD2d 164, 171, *revd on other grounds* 59 NY2d 205). Moreover, we find that the statements made by any of the employee defendants concerning plaintiff's conduct are subject to a qualified privilege *(Toker v Pollak, supra,* p 221; *Shapiro v Health Ins. Plan,* 7 NY2d 56, 60), which privilege insulates defendants from liability where, as here, there is no showing by plaintiff of any malice on the part of defendants *(Trails W. v Wolff,* 32 NY2d 207, 221; *Handlin v Burkhart,* 101 AD2d 850, 851, *lv dismissed* 64 NY2d 882; *Rezey v Golub Corp.,* 73 AD2d 772, 774, *affd* 52 NY2d 713). Since there is no liability on the part of the corporate employees, summary judgment was properly granted to them and their employers, the corporate defendants *(Shapiro v Health Ins. Plan, supra,* p 63).

Order affirmed, with costs. Mahoney, P. J., Kane, Casey and Weiss, JJ., concur.

Levine, J., concurs in part and dissents in part in the following memorandum. Levine, J. (concurring in part and dissenting in part). The moving and opposing affidavits of the parties set forth facts from which a jury could find that defendant Kevin Wippich, the security receiver at the Colonie store of defendant Big V Supermarkets, Inc. (Big V) who accepted plaintiff's delivery on December 19, 1979, thereafter

reported that there were two errors in the first invoice plaintiff submitted: (1) a quantity discrepancy in which a "1" had been placed in front of a quantity of 45 units delivered; and (2) a price discrepancy in which the invoice charged $70 more than the actual price of another item. Wippich could also be found to have reported that plaintiff attempted to correct the error in quantity on the first invoice, but smudged it so badly that he took it back to replace it with a second invoice. When the latter invoice was presented, according to Wippich, he noticed that the $70 pricing error had been transferred to another item. Upon pointing this out to plaintiff, the second invoice was discarded into the store's compactor and then plaintiff prepared and submitted a third invoice which was correct. There was also evidence that the foregoing facts, i.e., that there was an aggregate of *three* separate misbillings by plaintiff and a total of three invoices presented, were reported by Wippich to defendant John Twardowski, assistant manager of Big V's Colonie store, who, in turn, passed the report further up the Big V chain of command, along with Wippich's conclusion that the three errors demonstrated that plaintiff had *deliberately* falsified his billings. These facts and conclusions were then communicated to plaintiff's employer, resulting in his termination. Subsequently, in connection with the preparation of Big V's defense of plaintiff's complaint to the State Division of Human Rights, Twardowski submitted a written statement in which, in substance, he asserted that he examined the second of the three invoices allegedly submitted by plaintiff and had confirmed the price overcharge contained therein as reported by Wippich.

Plaintiff's affidavit in opposition flatly denies that any discrepancy in invoices existed other than the addition of the "1" in front of the 45 units of one item of merchandise delivered, which he denied responsibility for. Plaintiff also avers that this error was corrected in the second and final invoice he presented that day. It should be noted that the second of the three invoices claimed in Wippich's report to have been delivered by plaintiff has never been produced and that Wippich has never verified that this invoice was ever shown by him to Twardowski.

On the basis of the foregoing evidence, I am of the view that plaintiff's causes of action against Wippich and Twardowski based upon their initial reports of his billing falsifications, and the causes of action against Big V for the same reports by those employees, should not have been dismissed. Admittedly, the reports were covered by a qualified privilege, as the

majority has held. However, the defense of qualified privilege in a defamation action is defeated by proof of malice, that is, that the defamatory statement was known to be false when made *(O'Rorke v Carpenter,* 55 NY2d 798, 799), or was made with reckless disregard as to its truth (Restatement [Second] of Torts § 600 [b] [1977]), or the maker lacked probable cause for believing it to be true *(Mercedes-Benz v Finberg,* 58 AD2d 808, 809). The versions of plaintiff and of Wippich regarding the events surrounding the delivery and alteration of invoices on December 19, 1979 are diametrically opposed to each other. As previously described, Wippich claimed that there was an aggregate of three discrepancies on the first two invoices plaintiff submitted, which were not corrected until a third invoice was submitted. Plaintiff has sworn that only one discrepancy ever existed in the first invoice, which was corrected by a fully accurate second and final invoice. Moreover, Wippich's accusation of plaintiff's deliberate falsification of billings was entirely based on the existence of several discrepancies which plaintiff only corrected after Wippich pointed them out. Since plaintiff and Wippich were the two direct participants in the transaction, a jury accepting plaintiff's version could readily infer that Wippich knowingly and falsely reported his version of the facts to Twardowski, along with his conclusion that those facts demonstrated plaintiff's intentional wrongdoing.

Regarding the malice of Twardowski in repeating Wippich's report of the factual events and his accusation of plaintiff's deliberate falsification, a jury could attach significance to the later statement of Twardowski in which he implied that he had confirmed Wippich's report by examining the second of the alleged three invoices. Although the latter statement itself was absolutely privileged because of its relationship to the then-pending proceeding before the State Division of Human Rights, a jury could clearly draw inferences from it concerning Twardowski's conduct and state of mind in initially passing on the facts and conclusions of Wippich's report and, based thereon, find that Twardowski thereby acted recklessly. Under settled authority, Big V could be held liable vicariously for defamatory statements made by its employees Wippich and Twardowski *(Karaduman v Newsday, Inc.,* 51 NY2d 531, 547; *Kennedy v James Butler, Inc.,* 245 NY 204, 206-207).

Accordingly, I would modify the order by reversing so much thereof as dismissed plaintiff's causes of action against Wippich and Twardowski and the derivately based causes of action against Big V.