**Howard B. MEYERS, Plaintiff,**

v.

**AMERADA HESS CORPORATION, Defendant.**

**No. 84 Civ. 7697 (EW).**

United States District Court, S.D.New York.

Nov. 1, 1986.

Wisehart & Koch, New York City, for plaintiff; Arthur M. Wisehart, Steven Lim, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant; Andrea S. Christensen, Stephen L. Sheinfeld, of counsel.

EDWARD WEINFELD, District Judge.

This action was commenced by Howard B. Meyers against his former employer Amerada Hess Corporation. The complaint alleges two causes of action: (1) Age discrimination under 29 U.S.C. section 623 et seq.; and (2) defamation for alleged defamatory statements made during an investigative conference held by the New York State Division of Human Rights ("Division"). The defendant moves for partial summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, dismissing the defamation claim which alleges that a false and defamatory statement referring to plaintiff as "a case of burn-out" was

made before the New York State Division of Human Rights, and that it was foreseeable that this statement would spread through "the grapevine" and would thereby be repeated to others outside the meeting.[1]

## I. A. Absolute Immunity

A threshold issue raised by this motion is whether the statement of "burn-out" alleged to have been made by defendant's counsel during the State Division of Human Rights investigatory conference ("conference") is protected by the absolute immunity which attaches to statements made in the course of a judicial proceeding.[2] The New York Court of Appeals has held that statements made in the course of judicial proceedings are absolutely privileged as long as they are material and pertinent to the questions involved in the proceedings.[3] If they meet this criteria, then motive is irrelevant.[4] This privilege extends to other official proceedings which can be considered quasi-judicial in nature, including administrative proceedings.[5] Therefore, the resolution of this issue depends on whether the conference can be considered quasi-judicial, and, if so, whether the alleged defamatory statement made in the course of the conference was "material and pertinent to the questions involved."

In *Silver v. Mohasco Corporation*,[6] the court dismissed three defamation actions stating that,

These actions sounding in libel and slander are based upon statements allegedly published by defendants before the State Division of Human Rights, and since the subject proceeding before the State Division of Human Rights was plainly quasi-judicial in nature, and the statements were pertinent to the charges of discrimination being considered therein, the statements were clearly privileged.

The New York Court of Appeals affirmed this holding with the statement that the libel and slander causes of action should be dismissed because they were based, "... on privileged statements made to the State Division of Human Rights."[7] While the *Silver* cases do not indicate at what stage in the State Division of Human Right's proceedings the alleged defamatory statements were made, given the facts of this case, this ambiguity is not significant.

In the frequently cited case of *Toker v. Pollak* the Court stated that:

... the communication of a complaint to a District Attorney does not constitute or institute a judicial proceeding. Hence, no one would dispute that at this point a District Attorney receiving such information does not act as a judicial or quasi-judicial officer. At this juncture his function is more analogous to that of the police officer than that of the Judge.[8]

What this case illustrates is that to be covered by the absolute immunity, the defamatory statements must have been made

---

1. The plaintiff, in opposing the motion, urges that he has not had sufficient discovery on this matter. However, for purposes of this motion, although defendant denies the alleged defamatory statement, the allegation is assumed to be true, and there is no need for discovery on the issue.

2. *See Toker v. Pollak*, 44 N.Y.2d 211, 405 N.Y.S.2d 1, 376 N.E.2d 163 (1978).

3. *Wiener v. Weintraub*, 22 N.Y.2d 330, 331, 292 N.Y.S.2d 667, 239 N.E.2d 540 (1968); *Youmans v. Smith*, 153 N.Y. 214, 219, 47 N.E. 265 (1897); *Park Knoll Assoc. v. Schmidt*, 89 A.D.2d 164, 454 N.Y.S.2d 901, 906 (2d Dept.1982), *rev'd on other grounds*, 59 N.Y.2d 205, 464 N.Y.S.2d 424, 451 N.E.2d 182 (1983).

4. *Toker v. Pollak*, 44 N.Y.2d 211, 219, 405 N.Y. S.2d 1, 376 N.E.2d 163 (1978); *Wiener v. Wein-*

*traub*, 22 N.Y.2d 330, 331, 292 N.Y.S.2d 667, 239 N.E.2d 540 (1968); *Youmans v. Smith*, 153 N.Y. 214, 219, 47 N.E. 265 (1897).

5. *Wiener v. Weintraub*, 22 N.Y.2d 330, 331–32, 292 N.Y.S.2d 667, 239 N.E.2d 540 (1968); *Andrews v. Gardiner*, 224 N.Y. 440, 445, 121 N.E. 341 (1918).

6. 94 A.D.2d 820, 462 N.Y.S.2d 917, 920 (3d Dept. 1983), *aff'd*, 62 N.Y.2d 741, 476 N.Y.S.2d 822, 465 N.E.2d 361 (1984).

7. 62 N.Y.2d 741, 743, 476 N.Y.S.2d 822, 465 N.E.2d 361 (1984).

8. 44 N.Y.2d 211, 220, 405 N.Y.S.2d 1, 376 N.E.2d 163 (1978).

"in office;"[9] in other words, they must have been made in the course of a "judicial proceeding," not prior to the commencement of it.[10]

However, there is no doubt that the investigatory conference is part and parcel of the Division's quasi-judicial proceedings. The investigatory conference involved a hearing in which the examiner was acting as an arm of the Division, in the investigation of a filed complaint, as part of the adjudicatory process by which the commissioner determines whether the complaint is lacking in probable cause, and therefore should be dismissed, or whether the merits of the case warrant further adjudicatory action; as such, the conference must be considered to be in the course of a quasi-judicial proceeding. This is supported by the fact that the absolute privilege attaches to "every step" of a quasi-judicial proceeding.[11] That the "step" takes place before an actual hearing is held does not exclude it from the privilege as long as it can be said to have been in the "course" of the proceedings, which includes preparation for those proceedings.[12] It does not matter that a hearing before an Administrative Law Judge might never occur if the complaint is dismissed for lack of probable cause, after the Division has completed its investigation of the matter and considered the evidence, any more than it matters that an allegedly defamatory complaint filed in a judicial action, which is clearly privileged under New York law, might be dismissed on the pleadings without a hearing.[13]

This investigatory conference was clearly a part of the quasi-judicial proceeding before the Division, which the New York Court of Appeals has already determined warrants application of the privilege attaching to judicial proceedings. Despite the lack of a court reporter, the fact that no evidence was taken, and that no rulings were made at the conference, the investigator was acting as an arm of the quasi-judicial body in the course of its decision as to whether or not there was sufficient probable cause to hold a hearing on the complaint. In contrast to the situation discussed in *Toker,* where the communication to the District Attorney was not part of a judicial body's consideration of the matter, the District Attorney was not acting on behalf of a judicial officer, and no complaint initiating the judicial proceedings had been filed, this conference was a step in the proceedings by which the State Division of Human Rights adjudicates the merits of a complaint filed with it. The absolute privilege against liability for alleged defamatory statements applies to statements made during the conference.

### B. Relevance of Statements

The next issue to be resolved is whether, as a matter of law, the statements made during the conference were material and pertinent to the issue in question at the conference.

The accepted standard for determining whether there has been an abuse of the privilege requires the court to determine whether the statements made are "so obviously impertinent as not to admit of discussion, and so needlessly defamatory as to

---

**9.** *Andrews v. Gardiner,* 224 N.Y. 440, 446, 121 N.E. 341 (1918).

**10.** *Cf. Park Knoll Associates v. Schmidt,* 59 N.Y.2d 205, 209–210, 464 N.Y.S. 424, 451 N.E.2d 182 (1983).

**11.** *See Stilsing Electric, Inc. v. Joyce,* 113 A.D.2d 353, 495 N.Y.S.2d 999, 1002 (3d Dept.1985).

**12.** *See, Missick v. Big V Supermarkets, Inc.,* 115 A.D.2d 808, 495 N.Y.S.2d 994 (3d Dept.1985), where the court held that statements made *in preparation for or during* the course of the proceeding before the State Division of Human Rights were absolutely privileged. *See also Wiener v. Weintraub,* 22 N.Y.2d 330, 292 N.Y.S.2d 667, 239 N.E.2d 540 (1962) (the privilege applies to the complaint filed in a quasi-judicial proceeding); *Rosa Furniture Corporation v. Banco De Ponce,* 54 A.D.2d 647, 387 N.Y.S.2d 634 (1st Dept.1976) (the privilege applied to an affidavit submitted by the defendant in opposition to a motion).

**13.** *Wiener v. Weintraub,* 22 N.Y.2d 330, 292 N.Y.S.2d 667, 239 N.E.2d 540 (1962).

warrant the inference of express malice." [14] The New York Court of Appeals has been clear that in applying this principle the courts are to be liberal—

> ... even to the extent of declaring that where matter is put forth by counsel in the course of a judicial proceeding that may possibly be pertinent, they will not so regard it as to deprive its author of his privilege, because the due administration of justice requires that the rights of clients should not be imperiled by subjecting their legal advisers to the constant fear of suits for libel or slander.[15]

■ Meyers contends that defendant's alleged statement that he was a case of "burn-out" was not pertinent to the questions at issue because defendant had taken the position that Meyers had not been terminated due to his performance but rather because defendant was engaging in a general reduction of its legal staff. Liberally construing the statement allegedly made by defendant's counsel, that statement was relevant to the issues in question at the conference. Saying that someone is "burned out" may involve a relative comparison. In other words, it does not necessarily mean that Meyers' work was not competent, but rather the statement might be intended to show that, compared to the employees who were not terminated, he was *less* efficient than he had formerly been, and not as productive as the other employees, and therefore he was the logical choice for termination in a cut-back. While absent a cut-back program plaintiff would not have been terminated merely because of his job performance, defendant asserts that when it was faced with the need to reduce its work force it chose to terminate Meyers' employment due to his comparatively less productive work. This would be consistent with defendant's contention that plaintiff was not terminated due to inadequate job performance, but

rather because it was necessary to terminate the employment of the lesser valuable employees in order to carry out the staff reduction program.[16]

In conclusion, it is clear that not only does the conference warrant the application of an absolute privilege against liability, but that the privilege applies to the alleged defamation at issue since it cannot be said that these alleged statements may not have been material to the issue of whether defendant's termination of Meyer's employment was motivated by age discrimination.

### C. Statements Made Outside the Conference

Plaintiff has attempted to divert attention from the basic issue presented by defendant's motion with unsupported references to the effect that the alleged defamatory statements were otherwise spread, prior to as well as after they were made in the conference, by the "grapevine," the "network," and the "rumor mill." This is a distortion of the record and clearly goes far beyond plaintiff's own complaint.

Plaintiff's complaint alleges only that defendant made defamatory statements about him on August 3, 1984 at a conference held by the New York State Division of Human Rights. Moreover, at the plaintiff's own deposition he testified that defendant's only publication of defamatory statements concerning him, that he was then aware of, was the "burn-out" statements made by defendant's counsel during the conference and referred to in the complaint.[17]

Any allegations by plaintiff that this statement and others like it "necessarily had to have been" disseminated to others outside the meeting in advance thereof, and would be repeated after the conference, is purely conjectural and amounts to nothing more than a conclusory, vague, and unsup-

---

14. *Youmans v. Smith,* 153 N.Y. 214, 220, 47 N.E. 265 (1897).

15. *Id.* at 219–20, 47 N.E. 265.

16. Whether or not its position was accepted by the examiner is immaterial; it was a basis upon

which defendant sought to persuade the examiner that there was no probable cause for issuance of a complaint.

17. *See* Meyers Deposition at 260.

ported allegation. It is devoid of any factual basis and fails to give any indication of when such statements were made, exactly what was actually said, how they were published, who published them, or to whom publication was made. Thus, the narrow issue presented on this motion is whether the statements which the complaint alleges were made at the conference permit the maintenance of the claim referred to in the complaint. As previously discussed, the statements made in the conference cannot subject the defendant to liability for defamation.

## II. 29 U.S.C. Section 623(d)

Plaintiff also contends that this claim arises under federal law because derogatory statements made about a former employee may give rise to a cause of action for violation of 29 U.S.C. section 623(d) of the Age Discrimination Act, which prohibits retaliation by an employer against an employee for engaging in protected activity under the Act. Our Court of Appeals has held that "No action based on a claim of age discrimination may be brought in federal court unless the claim was properly raised with the EEOC, i.e., ... *within the scope of the EEOC investigation reasonably expected to grow out of the filing ....*" [18] In an analogous case brought under Title VII, *Ferguson v. Mobil Oil Corporation,*[19] the court held that a discharged employee's postcharge "blacklisting" retaliation claim did not grow out of claims of discriminatory discharge nor was it sufficiently similar to such claims to warrant inclusion therewith, and therefore the court lacked subject-matter jurisdiction over such allegations which had not been included in the charge submitted by the plaintiff to the Equal Employment Opportunity Commission.[20] The court's stated policy for this holding was based on the recognition that conciliation via the efforts of the EEOC is preferred to invoking the relief available in the federal courts.[21] This policy clearly applies to the Age Discrimination Act, as does the analysis which interprets a retaliation claim of this nature as a separate claim. If allegations of retaliation through the spreading of rumor and/or blacklisting were not included in Meyers' original complaint filed with the EEOC, his retaliation claim fails to state a cause of action upon which relief can be granted by this court.

■ The plaintiff filed complaints alleging age discrimination with the Equal Employment Opportunity Commission ("EEOC") as well as the New York State Division of Human Rights on September 15, 1983, and the EEOC issued him a "right to sue" letter on February 1, 1984, while the complaint was still pending before the Division of Human Rights.[22] The Human Rights Division conference, at which the defamatory statements made by the defendant were alleged to have occurred, took place on August 3, 1984,[23] which is after the EEOC had already made its final disposition on the case. Therefore, it is not possible that this issue of retaliatory defamation was raised in the proceedings before the EEOC. The age discrimination claim, which was before the EEOC and which comprises Count I of the complaint, and the retaliation claim, which is in Count II of the complaint, involve distinct factual realms, and therefore, since it is clear that this charge was never presented either to the federal or state agencies, plaintiff cannot now raise this retaliation claim under 29 U.S.C. section 623(d) before this court.

18. *Miller v. International Tel. & Tel. Corp.,* 755 F.2d 20, 23–24 (2d Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985) (emphasis added).

19. 443 F.Supp. 1334, 1338 (S.D.N.Y.1978).

20. *See also McPartland v. American Broadcasting Companies, Inc.,* 623 F.Supp. 1334 (S.D.N.Y. 1985); *Ibrahim v. N.Y. State Dept. of Health,* 581 F.Supp. 228, 233 (E.D.N.Y.1984); *Silver v. Mo-* hasco Corp., 497 F.Supp. 1 (N.D.N.Y.1978), *rev'd on other grounds,* 602 F.2d 1083 (2d Cir.1979), *rev'd* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).

21. *Id. See also Comfort v. Rensselaer Polytechnic Institute,* 575 F.Supp. 258 (N.D.N.Y.1983).

22. *See* Complaint, para. 18.

23. *See* Rowe aff., para. 2.

### Conclusion

Defendant's motion for partial summary judgment dismissing Count II of the complaint is granted. Defendant's motion for costs and attorney's fees is denied.

So ordered.