**Vijay N. BORASE, Plaintiff,**

v.

**M/A–COM, INC., Defendant.**

**Civ. A. No. 94–10407–MLW.**

United States District Court,
D. Massachusetts.

Nov. 28, 1995.

John A. Houlihan, Steven M. Cowley, Edwards & Angell, Boston, MA, for Vijay N. Borase.

David B. Ellis, James W. Bucking, Foley, Hoag & Eliot, Boston, MA, for M/A–COM, Inc.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (# 5)

COLLINGS, United States Magistrate Judge.

### INTRODUCTION

On February 28, 1994, plaintiff Vijay N. Borase ("Borase") filed a sixteen count verified complaint (# 1) against his former employer, M/A–COM, Inc. ("M/A COM") purporting to state claims of unlawful discrimination based on race, color, and/or national origin. The claims stem from Borase's dismissal by M/A–COM on January 20, 1993. M/A COM has filed a motion for partial summary judgment as to Counts II, VI and XIV.

### COUNTS II AND VI—THE CLAIMS OF RETALIATION

MA/COM does not contend that the claims of alleged discrimination occurring on January 20, 1993 have not been exhausted and/or are not properly before the Court. In fact, a right to sue letter which permitted Borase to commence suit on his original allegations of discrimination was issued on January 14, 1994 [1], and suit was commenced on February 28, 1994. Rather, M/A COM seeks summary judgment on Counts II and VI. In these counts, Borase alleges that M/A–COM retaliated against him because he had filed administrative claims with the EEOC and MCAD based on his January 20, 1993 termination. Count II is based on Title VII of the Civil Rights Act of 1964; Count VI is based on M.G.L.A. c. 151B.

The act of retaliation alleged is M/A–COM's decision to withhold six thousand three hundred and twenty-two (6,322) shares of stock to which Borase claims he is entitled. According to Borase, under an agreement with M/A–COM, he should have been granted options to purchase three thousand six hundred and fifty-five (3,655) shares between July and November, 1993. M/A–COM avers that it is entitled to summary judgment on Counts II and VI because Borase did not exhaust his administrative remedies on the retaliation claims before filing suit on February 28, 1994. The date of the act of retaliation is disputed. Borase contends that the date is March 7, 1994; M/A–COM claims the date is October 12, 1993. What is undisputed is that Borase did not notify either the MCAD or EEOC of the alleged retaliation or file a claim based upon it with either agency before filing suit on February 28, 1994.[2]

Every circuit which has had to decide the issue has held that a charge that an employer has committed acts of retaliation for an employee having filed a complaint of discrimination with an administrative agency does not have to be the subject of a separate administrative claim before the agency in

---

1. So far as I can discern, the fact that a right to sue letter was issued on January 14, 1994 permitting suit on the original claims of discrimination does not appear in the complaint or any of the papers filed in connection with the motion. However, based on the statements of defendant's counsel at the hearing on April 21, 1994 (*see*, Transcript, pp. 13–14) which were not thereafter controverted by plaintiff's counsel, I assume that the fact is accurate.

2. Although claiming that the final decision to withhold the stock options did not come until March 7, 1994, Borase filed his complaint on February 28, 1994 and recited, in Counts II and VI, that:

    In retaliation for Mr. Borase having filed a charge of discrimination with the EEOC and MCAD ..., M/A–COM refused to pay Mr. Borase 6,322 shares of stock which were previously earned and awarded.

   Complaint (# 1) at ¶¶ 39 & 51.

order to be brought into court. A number of circuits have held flatly that "an act committed by an employer in retaliation for the filing of an EEOC complaint is reasonably related to that complaint, obviating the need for a second EEOC complaint." *Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10 Cir., 1994) quoting from *Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 864 F.2d 680, 682 (10 Cir., 1988) and citing *Butts v. City of New York Dep't of Housing Preservation & Dev.*, 990 F.2d 1397, 1403 (2 Cir., 1993); *Nealon v. Stone*, 958 F.2d 584, 590 (4 Cir., 1992); *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7 Cir., 1989); *Waiters v. Parsons*, 729 F.2d 233, 237 (3 Cir., 1984). I note that when the Fourth Circuit decided the *Nealon* case in 1992 and determined to adopt the rule that exhaustion is not required in order for a claim of retaliation to be heard in court, Chief Judge Ervin wrote that:

> All other circuits that have considered the issue have determined that a plaintiff may raise the retaliation claim for the first time in federal court. On consideration, we find these rationales persuasive and adopt this position.

*Nealon*, 958 F.2d at 590.

The Fifth Circuit reaches the same result but states the rule a bit differently. In the case of *Gupta v. East Texas State University*, 654 F.2d 411 (5 Cir., 1981), the Court held:

> ... it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before it.

*Id.* at 414.

The Fifth Circuit reiterated that holding six years later in the case of *Gottlieb v. Tulane University of Louisiana*, 809 F.2d 278 (5 Cir., 1987).

Against this background, it is necessary to consider the First Circuit's decision in the case of *Johnson v. General Electric*, 840 F.2d 132 (1 Cir., 1988) upon which the defendant relies in seeking dismissal of the retaliation claims for failure to exhaust administrative remedies. In the *Johnson* case, the First Circuit dismissed Counts I and II of plaintiff's complaint of acts of racial discrimination because plaintiff had "... not asserted facts sufficient to create inferences that would support a finding that he would have been treated differently had he not been black." *Johnson*, 840 F.2d at 138 (citation omitted). As to Count III charging retaliation for filing the EEOC complaint, the Court wrote:

> The district court properly dismissed this count on the ground that plaintiff had not adequately exhausted required EEOC procedures.
>
> No claim may be brought in federal court unless the prerequisite of administrative investigation has first been met. A complaint related to that brought before the EEOC, but which was not itself made the subject of a separate EEOC complaint, must reasonably have been expected to have been within the scope of the EEOC's investigation in order to meet the jurisdictional prerequisite. *See, e.g., Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 23–24 (2d Cir.1985). The retaliation claim here could not have been expected to be part of the scope of the EEOC's investigation growing out of [plaintiff's] earlier complaints, because plaintiff has not alleged that he even informed the EEOC of the alleged retaliation. *See Meyers v. Amerada Hess Corp.*, 647 F.Supp. 62, 67 (S.D.N.Y.1986). (footnote)

*Id.* at 139.

In the footnote, the Court wrote:

> We need not decide whether we would have "ancillary" jurisdiction over the retaliation claim even in the absence of an EEOC complaint, *see Gottlieb v. Tulane Univ. of Louisiana*, 809 F.2d 278, 284 (5th Cir.1987); *Gupta v. East Texas State Univ.*, 654 F.2d 411 (5th Cir.1981), because with the dismissal of the remaining counts, there is no longer any federal court case to which the retaliation claim might be ancillary.

*Id.*

■ The first question under the *Johnson* holding is whether or not a retaliation claim might "... reasonably be expected to have

been within the scope of the EEOC's investigation ...". *Johnson,* 840 F.2d at 139. It does not matter whether the administrative agency actually conducted an investigation of either the initial complaints or the claims of retaliation. "What controls is not what the EEOC did but what it was given the opportunity to do." *Oglesby v. Coca–Cola Bottling Co.,* 620 F.Supp. 1336, 1344 (N.D.Ill., 1985) quoted verbatim in the case of *Powers v. Grinnell Corp.,* 915 F.2d 34, 39 n. 4 (1 Cir., 1990). *See also Conroy v. Boston Edison Co.,* 758 F.Supp. 54, 58 (D.Mass., 1991).

Clearly, any of the acts, be they preliminary or final, respecting the denial of the stock options which occurred between the date of the filing of the original administrative claims (July 19, 1993) and the right to sue letter on those claims (January 14, 1994) would have reasonably been expected to have been within the administrative agency's investigation. However, what seems quite clear from the holding in the *Johnson* case is that they cannot be within the scope of the agency's investigation unless the agency is informed of them. In the instant case, there is no evidence that Borase informed any administrative agency of the alleged retaliatory acts concerning the stock options during the period from July 1993 to January 1994 when the administrative agency was investigating the case. In the words of the *Oglesby* case, the administrative agency would have had no opportunity or reason to look into these acts during the period when Borase's case was under investigation.

In sum, in view of the *Johnson* precedent, there are preconditions which must be found before "an act committed by an employer in retaliation for the filing of an EEOC complaint is reasonably related to that complaint, obviating the need for a second EEOC complaint" as was held in the *Ingels* case, 42 F.3d at 625 and other cases cited therein. These preconditions are, first, that the plaintiff must have informed the administrative agency of the alleged acts of retaliation, and, second, that the notice must have been given during the time when the agency had the original charges of discrimination under investigation. Notice after the administrative agency had ceased its investigation and issued a right to sue letter would not suffice since, as of that time, the investigation would have been concluded and a new administrative complaint would have had to have been filed to provide the administrative agency the opportunity to investigate the charge of retaliation.

■ I note that other circuits do not draw this distinction with respect to retaliation claims. *Butts,* 990 F.2d at 1402; *Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1209 (2 Cir., 1993). In *Butts,* the Second Circuit wrote that with respect to claims of retaliation:

...[T]he EEOC charge requirement is not excused because the new claims likely would have been discovered by the EEOC investigation. While this is possible, it is equally possible that the retaliation would come after the EEOC investigation was completed. *Malarkey,* 983 F.2d at 1209 ("We see no reason why a retaliation claim must arise before administrative proceedings terminate in order to be reasonably related"). Rather, in such situations, we have relaxed the exhaustion requirement based on the close connection of the retaliatory act to both the initial discriminatory conduct and the filing of the charge itself. [citation omitted] The EEOC will already have had the opportunity to investigate and mediate the claims arising from the underlying discriminatory acts alleged. Due to the very nature of retaliation, the principle benefits of EEOC involvement, mediation of claims and conciliation, are much less likely to result from a second investigation. Indeed, requiring a plaintiff to file a second EEOC charge under these circumstances could have the perverse result of promoting employer retaliation in order to impose further costs on plaintiffs and delay the filing of civil actions relating to the underlying acts of discrimination.

*Butts,* 990 F.2d at 1402.

However, the First Circuit appears to tie the question of whether a retaliation claim is reasonably related so as to excuse exhaustion to the opportunity of the administrative agency to investigate. The opportunity to investigate requires notice to the administrative agency during the period in which an investigation of the underlying acts of discrimination is still ongoing. This is the clear message of the *Johnson* and *Powers* cases.

■ However, there remains the question of whether there is "ancillary" jurisdiction over the retaliation claims. As noted earlier, this question was left unresolved in the *Johnson* case. Unlike the situation in the *Johnson* case in which there were no valid claims of discrimination to which the retaliation claim would be "ancillary," in the instant case, Borase's underlying claims of discrimination remain for adjudication. In these circumstances, I will adopt the holdings of the Fifth Circuit in the *Gottlieb* and *Gupta* cases and hold that I have discretion to assert "ancillary" jurisdiction over the retaliation claims set forth in Counts II and VI of the Complaint.[3]

In the circumstances of the instant case, I exercise that discretion in favor of asserting "ancillary" jurisdiction over the retaliation claims. Accordingly, the motion for partial summary judgment as to those claims will be denied. My reason is simply that at this stage of the case, no purpose would gained by declining to assert such jurisdiction. Borase filed an administrative claim based on the alleged retaliation on April 21, 1994, the day after the motion for partial summary judgment as filed. During the time when the motion was pending before the Court,[4] Borase exhausted his administrative remedies on the retaliation claims, receiving a right to sue letter on those claims on June 23, 1994. In these circumstances, assuming "ancillary" jurisdiction over the retaliation claims contained in Counts II and VI seems eminently sensible.[5]

## COUNT XIV—CLAIM FOR WRONGFUL TERMINATION ON GROUND OF PUBLIC POLICY UNDER MASSACHUSETTS LAW

■ In Count XIV of his complaint, Borase alleges the following:

3. Although the Fifth Circuit in the *Gottlieb* and *Gupta* cases does not frame their holding in terms of discretion, in light of the First Circuit law discussed, *supra*, I am not prepared to hold that in all circumstances, I am required to assert "ancillary" jurisdiction over retaliation claims when they are joined with properly exhausted underlying claims of discrimination.

4. The motion was pending without action before the District Judge to whom the case was original-

Under Massachusetts law, an employer is prohibited from terminating at [sic] at-will employment contract in bad faith or for reasons that violate public policy.

M/A–COM's termination of Mr. Borase because of his race, color, national origin and/or ancestry was in bad faith and contrary to Massachusetts' public policy prohibiting discrimination based on race, color, national origin or ancestry.

Borase is correct that under Massachusetts law, a cause of action exists for termination of an at-will employee for reasons that violate public policy. *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (1977); *Hutson v. Analytic Sciences Corp.*, 860 F.Supp. 6 (D.Mass., 1994). However, it is well settled under Massachusetts that:

> Massachusetts does recognize a claim for breach of the implied covenant of good faith and fair dealing when a claimant shows that an employer's reason for discharge was contrary to public policy [citation omitted] **but this cause of action exists only when there is no other adequate way to vindicate the public policy.** *Melley v. Gillette*, 19 Mass.App. 511, 475 N.E.2d 1227 (1985) ...

*Grubba v. Bay State Abrasives, Division of Dresser Industries, Inc.*, 803 F.2d 746, 747 (1 Cir., 1986) (emphasis added).

Thus, in the *Melley* case, the Court held that there is no claim for wrongful termination in violation of the public policy against age discrimination because there is a comprehensive legislative scheme prohibiting age discrimination in employment set forth in M.G.L.A. c. 151B, § 4 (Supp.1986). *Melley v. Gillette*, 19 Mass.App.Ct. 511, 512, 475 N.E.2d 1227, 1228–9. *See also Crews v. Me-*

ly assigned for eleven months from April 20, 1994 until March 28, 1995, the date upon which the case was reassigned to the undersigned by the consent of the parties pursuant to 28 U.S.C. § 636(c).

5. It also obviates the need for determining when precisely the act of retaliation occurred and whether the administrative claim was filed within the prescribed number of days thereafter.

70

*morex Corp.,* 588 F.Supp. 27, 28–30 (D.Mass., 1984); *Mouradian v. General Electric Co.,* 23 Mass.App.Ct. 538, 541–2, 503 N.E.2d 1318, 1320–1 (1987). In the case of *Bergeson v. Franchi,* 783 F.Supp. 713, 718 (D.Mass., 1992), the Court refused to recognize a cause of action for a termination which violated the public policy against sexual harassment in view of the fact that "[t]he Massachusetts legislature ... has provided comprehensive schemes to remedy such harassment by enacting Mass.Gen.L. ch. 151B and the [Massachusetts Civil Rights] Act." *Id.* Lastly, in the case of *Charland v. Muzi Motors, Inc.,* 417 Mass. 580, 631 N.E.2d 555 (1994), the Supreme Judicial Court held that an employee could not bring an action for unlawful termination based on age and national origin under the equal rights act, M.G.L.A. c. 93, §§ 102 and 103, because Chapter 151B provides the exclusive remedy for employment discrimination.[6] *Id.,* 417 Mass. at 585–6, 631 N.E.2d at 558.

At oral argument, Borase's counsel argued that the public policy upon which Borase relies in Count XIV is the policy set forth in 42 U.S.C. § 1981. Transcript, p. 32. However, for persons in Massachusetts, M.G.L.A. c. 93, § 102 enunciates virtually the same public policy as is promulgated on a federal level by 42 U.S.C. § 1981. If an employee may not bring a wrongful termination claim based on the public policy set forth in M.G.L.A. c. 93, § 102 because of the exclusivity of the remedies set forth in Chapter 151B, I rule that the employee may not do so based on the public policy set forth in 42 U.S.C. § 1981. I do not see the case of *Comey v. Hill,* 387 Mass. 11, 438 N.E.2d 811 (1982) as requiring a different result essentially for the reasons stated by the Supreme Judicial Court in *Charland,* 417 Mass. at 587, 631 N.E.2d at 559. Count XIV must therefore be dismissed as failing to state a claim upon which relief may be granted.

### *ORDER*

Accordingly, it is ORDERED that Defendant's Motion for Partial Summary Judg-

ment (# 5) be, and the same hereby is, ALLOWED to the extent that Count XIV is DISMISSED pursuant to Rule 12(b)(6), Fed. R.Civ.P., for failure to state a claim upon which relief may be granted. It is FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment (# 5) be, and the same hereby is, otherwise, DENIED.

---

6. In the *Charland* case, the Supreme Judicial Court cited the Appeals Court decision in *Melley v. Gillette* as "... an opinion whose analysis and conclusion we have adopted." *Charland,* 417 Mass. at 586, 631 N.E.2d at 558.