Patricia A. LORANCE, Janice M. King, and Carol S. Bueschen, Plaintiffs-Appellants,

v.

AT & T TECHNOLOGIES, INC. and Local 1942, International Brotherhood of Electrical Workers, AFL–CIO, Defendants-Appellees.

No. 86–2584.

United States Court of Appeals, Seventh Circuit.

Argued April 24, 1987.

Decided Aug. 19, 1987.

Rehearing and Rehearing En Banc Denied Oct. 30, 1987.

Bridget Arimond, Davis, Barnhill & Galland, Chicago, Ill., for plaintiffs-appellants.

Charles C. Jackson, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, and CUDAHY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

The plaintiffs are female hourly wage workers employed by AT & T Technologies. Between 1978 and 1980, the plaintiffs were required to surrender their plant-wide seniority in order to be promoted to the position of "tester," a comparatively high-paying job which had customarily been held by men. In 1982, AT & T reduced its employment force. In carrying out its reductions, AT & T considered only the seniority that the plaintiffs had accrued during the time that they had been testers. As a result, AT & T demoted the plaintiffs to less desirable positions. The plaintiffs subsequently filed this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e—2000e–17 (1982), alleging that their demotions constituted illegal discrimination based on sex. The district court granted summary judgment for the defendants on the ground that the plaintiffs' claims were untimely. We affirm.

I.

The plaintiffs, Patricia A. Lorance, Janice M. King, and Carol S. Bueschen, are hourly wage employees of the defendant employer, AT & T Technologies, and are members of the defendant union, Local 1942. Lorance and Bueschen have been employed at AT & T's Montgomery Works facility in Aurora, Illinois since 1970. King began work at that facility in 1971. At the time the plaintiffs began their employment at Montgomery Works, seniority was calculated on a plant-wide basis. Promotions and demotions within the hourly wage jobs at the facility were based on plant-wide seniority.

Among the hourly wage jobs at Montgomery Works is a category of jobs collectively known as the "tester universe." These positions are among the highest-paying hourly wage jobs at the facility. Al-

though these positions traditionally had been filled by men, by 1978 an increasing number of women had used their plant-wide seniority to obtain jobs as testers. In late 1978, the plaintiffs' union entered into discussions with AT & T concerning the seniority rules governing the tester positions. The employer and the union ultimately developed a proposal, known as the "Tester Concept." Under this plan, once an employee became a tester, promotions and demotions were to be based on the length of time that the employee had been a tester ("tester seniority"), rather than on the length of time the employee had been at the Montgomery Works facility.

The Tester Concept was extensively discussed at a series of union meetings. On June 28, 1978, the union held a special meeting to vote on the Tester Concept. The plan was approved by a margin of ninety votes to sixty—approximately the ratio of men to women. All three plaintiffs attended the meeting, and voted against the plan. On July 23, 1979, the union and the employer entered into a letter of agreement adopting the Tester Concept.

At the time the Tester Concept was adopted, Lorance was employed as a tester. King was promoted to a tester position in February, 1980. Bueschen obtained a tester job in November, 1980. By the summer of 1982, Lorance and King had been promoted to senior tester positions. At that time, AT & T began a reduction in force, which it conducted in accordance with the terms of the collective bargaining agree-ment. Based on their tester seniority, Lorance and King were demoted to lower-pay-ing, more junior tester positions. Bueschen was demoted to a non-tester job. The plaintiffs allege that they would not have been demoted had the decision been based on plant-wide seniority.

On April 13, 1983, Lorance and Bueschen filed complaints with the Equal Employment Opportunity Commission. King filed a complaint with the Commission eight days later. After obtaining right-to-sue letters, the plaintiffs brought this action on September 30, 1983. The plaintiffs alleged that their demotions violated Title VII. They also sought certification of a class consisting of all women employees at the Montgomery Works facility who either were testers and had lost their plant-wide seniority, or who had been deterred from becoming testers because of the requirement that they give up their plant seniority. The defendants moved for summary judgment on the ground that the plaintiffs' suit was time-barred. The district court granted the defendants' motion, holding that the limitations period had begun at the time they knew or should have known that they had lost their plant-wide seniority. The plaintiffs then brought this appeal.[1]

## II.

Title VII claims brought in Illinois are generally subject to a 300–day period of limitation. See 42 U.S.C. § 2000e–5(e) (1982).[2] In order to satisfy the timeliness requirement, a plaintiff must allege that a

1. The district court granted summary judgment without first considering the plaintiffs' motion for class certification. This is a violation of Federal Rule of Civil Procedure 23, which requires the district court to decide the question of class certification "as soon as practicable," Fed.R.Civ.P. 23(c)(1). Although a district court's deliberate decision not to certify a class deprives us of appellate jurisdiction, Glidden v. Chromalloy American Corporation, 808 F.2d 621 (7th Cir.1986), we are not deprived of jurisdiction in a case, such as the present one, in which the district court inadvertently does not act on the certification motion, see Bennett v. Tucker, 827 F.2d 63, 66–67 (7th Cir.1987). Nonetheless, this case illustrates the problem that may arise when a court does not comply with Rule 23. Because the district court did not decide the class certification motion, we do not know who is bound by our judgment. This may raise a significant res judicata problem in any future litigation that may arise out of the defendants' administration of the tester seniority system.

2. The 300–day limitations period is based on the fact that Illinois has a state agency to which employment discrimination complaints may be referred. In states that do not have their own agencies, the deadline is only 180 days. See 42 U.S.C. § 2000e–5(e) (1982). The defendants argue that because the plaintiffs did not make use of the existing state procedures, the 180–day period applies. However, we need not resolve this question, because the plaintiffs' claims are untimely under either standard.

specific action taken by the defendant during the preceding 300 days violated Title VII. *See Nazaire v. Trans World Airlines*, 807 F.2d 1372, 1376 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987). A claim is not timely if it merely asserts that a discriminatory act that occurred prior to the limitations period had an effect that occurred during the limitations period. *See id.*

Determining whether a plaintiff is challenging an act of discrimination, rather than the effects of a prior act of discrimination, is especially important when seniority systems are involved. This is because a seniority system may perpetuate the effects of a past act of discrimination. For example, in *United Airlines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), the defendant fired the plaintiff for a discriminatory reason, but later rehired her. However, the defendant did not give the plaintiff seniority credit for the four-year period during which she had been out of work. As a result, the plaintiff was at a competitive disadvantage in obtaining seniority-based benefits, such as wage increases and promotions. The plaintiff filed suit, alleging that the employer was violating Title VII. The Supreme Court noted that the plaintiff's firing had been an act of discrimination, which the plaintiff could have contested within the limitations period. However, the Court went on to hold that the disadvantages that the employee incurred because of her loss of seniority were merely the effect of the prior discriminatory firing. *See id.* at 558, 97 S.Ct. at 1889.

■ The plaintiffs in this case argue that their demotions constituted acts of discrimination. They recognize that, under *Evans*, the fact that a seniority system perpetuates the effect of prior discrimination does not constitute an act of discrimination. However, they argue that *Evans* does not apply in this case, because AT & T and Local 1942 allegedly adopted the seniority system for the very purpose of discriminating. The plaintiffs contend that the continued application of any intentionally discriminatory seniority system constitutes a continuing violation of Title VII. *See Patterson v. American Tobacco Company*, 634 F.2d 744, 750–51 (4th Cir.1980), *vacated on other grounds*, 456 U.S. 63, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982); *cf. Morelock v. NCR*, 586 F.2d 1096, 1102–03 (6th Cir.1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979) (operation of discriminatory seniority system constitutes ongoing violation under ADEA). Therefore, they reason, each action taken pursuant to the seniority system that disadvantages an employee constitutes an act of discrimination.

Although the plaintiffs' argument is logically appealing, we are compelled to reject it. If we were to hold that each application of an allegedly discriminatory seniority system constituted an act of discrimination, employees could challenge a seniority system indefinitely. This would run counter to the strong policy favoring the prompt resolution of discrimination disputes. *See Delaware State College v. Ricks*, 449 U.S. 250, 259–60, 101 S.Ct. 498, 504–05, 66 L.Ed.2d 431 (1980). This policy is especially important where seniority systems are involved. If a court finds that a seniority system was adopted for a discriminatory purpose, it may be obligated to order drastic restructuring of the system. *See, e.g., Teamsters v. United States*, 431 U.S. 324, 371–77, 97 S.Ct. 1843, 1872–76, 52 L.Ed.2d 396 (1977). The longer a plaintiff delays, the more difficult it becomes for a court to craft relief that strikes the critical balance between eradicating existing discrimination and protecting the rights of all employees. Accordingly, we cannot accept the plaintiffs' suggestion that any adverse action taken pursuant to an allegedly discriminatory seniority system constitutes an act of discrimination.

■ The defendants argue that their adoption of the Tester Concept constituted the relevant act that triggered the period of limitations. However, we must also reject this position. At the time the defendants adopted the Tester Concept, neither King nor Bueschen were testers. We can see no reason why they should have been required to contest a seniority system that did not apply to them. Requiring employ-

ees to contest any seniority system that might some day apply to them would encourage needless litigation. Moreover, viewing the adoption of a discriminatory seniority system as the act of discrimination that triggers the limitations period would frustrate the remedial policies that are the foundation of Title VII. Under this approach, any seniority system would be immune to challenge 300 days after its adoption. Future employees would therefore have no recourse when confronted with an existing seniority system that they believe to be discriminatory.

We believe that it is essential to strike a balance that reflects both the importance of eliminating existing discrimination, and the need to insure that claims are filed as promptly as possible. We therefore conclude that the relevant discriminatory act that triggers the period of limitations occurs at the time an employee becomes subject to a facially-neutral but discriminatory seniority system that the employee knows, or reasonably should know, is discriminatory. We emphasize that our holding is a narrow one. We recognize that an act of discrimination may occur when an employer acts pursuant to a seniority system that is facially discriminatory. *See Bartmess v. Drewrys, U.S.A.*, 444 F.2d 1186 (7th Cir.), *cert. denied*, 404 U.S. 939, 92 S.Ct. 274, 30 L.Ed.2d 252 (1971). A violation may also occur where an employer uses any discretion that it may have under a collective bargaining agreement in a discriminatory manner. *See generally Stewart v. CPC International*, 679 F.2d 117, 120–21 (7th Cir.1982) (*per curiam*) (discussing various "continuing violation" theories).

In this case, the employer complied fully with the facially-neutral seniority system. Although the plaintiffs were aware of the potentially discriminatory impact of this system at the time they became subject to it,[3] they did not file charges with the EEOC for periods ranging from two-and-a-half to five years after AT & T's allegedly discrim-

inatory act. This is well beyond the 300–day maximum that Title VII requires. Accordingly, we must conclude that the plaintiffs' claims are time-barred. The decision of the district court is, therefore, AFFIRMED.

---

CUDAHY, Circuit Judge, dissenting:

I am wholly in sympathy with the majority's objective of obtaining a prompt resolution of challenges to seniority systems. This is consistent with the Supreme Court's policy concerns in *United Airlines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) and *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Unfortunately, I do not believe the majority's result here furthers this objective. There are almost certain to be other members of the class who are not barred by the statute of limitations and who can bring challenges to tester seniority in the future. Perhaps this is why the defendants have not argued in support of the result reached by the district court and affirmed here; the defendants have argued instead for the date of adoption of the seniority plan as triggering the statute of limitations—an outcome that would effectively immunize the seniority system from future challenges.

The plaintiffs have alleged that the seniority system in question was discriminatory in purpose and effect. The mere fact that it was not *facially* discriminatory does not seem to me relevant for purposes of the statute of limitations. *See Bartmess v. Drewrys U.S.A., Inc.*, 444 F.2d 1186 (7th Cir.), *cert. denied*, 404 U.S. 939, 92 S.Ct. 274, 30 L.Ed.2d 252 (1971). The plaintiffs filed complaints at the time they were injured (by demotion) in the way the defendants allegedly intended them to be injured. Viewed in that direct and uncluttered fashion, their complaints were timely.

The majority says that the plaintiffs are too late because they knew earlier that

---

3. On appeal, the plaintiffs suggest that a genuine issue of material fact exists as to when they became aware that they had lost their plant-wide seniority. However, the affidavits that the plaintiffs submitted to the district court conclu-

sively prove that the plaintiffs were aware that they had forfeited their plant-wide seniority on the day they became subject to the Tester Concept.

they had become subject to the allegedly discriminatory system. At this earlier time, however, they had not really been injured and might never be injured. The majority's rule, therefore, may encourage premature lawsuits.

Cases such as *Evans, supra,* on which the majority relies, did not involve seniority systems that were themselves alleged to be discriminatory. In *Evans,* the seniority system merely magnified the impacts of other acts alleged to be discriminatory.

Therefore, although I think the majority's policy concerns are important, they find dubious application in the result here, and I therefore respectfully dissent.