**Earl JOHNSON, Plaintiff, Appellant,**

v.

**GENERAL ELECTRIC,
Defendant, Appellee.**

No. 87–1752.

United States Court of Appeals,
First Circuit.

Heard Jan. 6, 1988.
Decided Feb. 22, 1988.

Michael A. Brown with whom Jae Shim and Grayer, Brown & Dilday, Boston, Mass., were on brief, for plaintiff, appellant.

Sandra L. Lynch with whom Kevin J. Fitzgerald, R. Michael Cassidy and Foley, Hoag & Eliot, Boston, Mass., were on brief, for defendant, appellee.

Before COFFIN, BOWNES and BREYER, Circuit Judges.

COFFIN, Circuit Judge.

Appellant Earl Johnson brought suit against his employer, General Electric Company, for discriminating against him on the basis of race. Johnson's complaint alleged three separate violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e-17. The district court granted defendant's motion to dismiss all three counts as being untimely. We affirm, though on different grounds with regard to Count II.

In June 1980, appellant filed a union grievance alleging that General Electric twice had denied him promotions to senior design positions because he was black. According to appellant's very sketchy complaint, after January 1981 he "continued to be passed over for promotion to the 'Senior Design' position by white males with less seniority and qualifications that were no greater than his." In July 1981, defendant placed the plaintiff on what plaintiff describes as a "three month trial review ... to determine if he was qualified for the Senior Design position." The facts at this point become very confusing. It is not clear what the result of this trial review process was. Plaintiff does not allege that anything happened at the end of the "three months." Instead, plaintiff alleges that in February of the following year, he "was informed that he had failed to pass a *second* trial review, disqualifying him for a promotion." In April 1982, he filed a complaint before the Equal Employment Opportunity Commission (EEOC). He alleges that since the filing of that complaint, his work assignments have been fewer and more simplistic, thus further preventing him from demonstrating skills sufficient for Senior Design work.

Title VII requires that an aggrieved individual file a charge with the EEOC "within one hundred and eighty days after the alleged employment practice occurred." 42 U.S.C. § 2000e-5(e). That period is extended to 300 days in "deferral states," such as Massachusetts, if the "person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice...." In such a deferral state, however, the complainant must file his charges with the EEOC within 240 days of the alleged violation, in order to allow 60 days for deferral to the state agency. *See Mohasco Corp. v. Silver*, 447 U.S. 807, 817, 100 S.Ct. 2486, 2492, 65 L.Ed.2d 532 (1980); *Cajigas v. Banco de Ponce*, 741 F.2d 464, 467 & n. 8 (1st Cir.1984). Johnson nowhere alleges that he filed a complaint with the state agency, or that it was forwarded to the agency by the EEOC, *see Mohasco*, 447 U.S. at 816, 100 S.Ct. at 2492, so it is unclear whether he should be held to a 240– or 180–day statute of limitations. That issue is immaterial, however, because appellant claims that the discriminatory events occurred less than 180 days before his EEOC filing, and appellee insists that the alleged violations occurred more than 240 days before such filing. Neither party claims that the events occurred between 180 and 240 days prior to the EEOC filing.

Count I of appellant's complaint sets forth allegations of discrimination in

1980 when two white males were promoted to Senior Design positions ahead of him. Appellant's EEOC complaint admittedly was not filed until at least 22 months after he was passed over for these positions. Therefore this claim is barred as untimely. Johnson's union grievance procedure does not toll the statute of limitations. *See Delaware State College v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 505, 66 L.Ed.2d 431 (1980).

The district court also dismissed Count II as untimely. That count reads as follows:

21. On or about June 3, 1980, the Plaintiff filed a grievance for failure to promote him. Thereafter and continuing to the present the Defendant has refused to promote the Plaintiff.

22. In July, 1981, the Defendant in response to Plaintiff's grievance established a review process that was designed to prevent the Plaintiff from qualifying as a "Senior Designer".

23. Despite the fact that the Plaintiff had already exhibited sufficient skills, and in fact performed work normally assigned to "Senior Designers" in the past, he was assigned to perform in an area that he was not familiar with. It was designed to cause his failure.

24. On or about February 24, 1982, Plaintiff was informed that he had failed the second trial review and would not be promoted.

25. This trial review process was unfair as applied to the Plaintiff as he had already adequately demonstrated the necessary skills for promotion to "Senior Designer". This artificial process was racially motivated and biased against the Plaintiff.

The appellee contends that this claim accrued in July 1981, when the trial review process was established. Appellant, on the other hand, insists that the clock did not start running on this claim until February 1982, when the appellant was informed that he would not be promoted.

The district court correctly dismissed Count II, but we disagree with its reasoning for that dismissal. We think the issue important enough to address the grounds relied upon by the district court. We then set forth our separate reasoning for affirming dismissal. *See Knight v. Mills*, 836 F.2d 659, 661 n. 3 (1st Cir.1987).

The district court, relying on *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), identified the establishment of the review process in the summer of 1981 as "the 'unlawful employment practice' of which [plaintiff] complains," *id.* at 257, 101 S.Ct. at 503, and therefore started the running of the statute from that point. Because appellant did not file his EEOC complaint until at least 274 days after this date, Count II was dismissed as time-barred.

We believe that this reliance on *Ricks* was in error. The district court's decision both reads the complaint too narrowly, and establishes a date of accrual at which it would have been unfair, if not impossible, for plaintiff to have instituted a Title VII action.

In *Ricks*, the Supreme Court held that the proper focus in Title VII cases for statute of limitations purposes is " 'upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful.' " 449 U.S. at 258, 101 S.Ct. at 504 (quoting *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir.1979)) (emphasis in *Ricks*). In that case, the Court found that the statute started running when a professor was informed that a denial of tenure had necessitated his dismissal, and not when he in fact had to leave his job.

Subsequent appellate cases have struggled to apply *Ricks* in various circumstances. The predominant question has concerned whether a claim accrues when an employee is made subject to an employment plan or evaluation (e.g., seniority status or a mandatory retirement age or a subjective evaluation), or when that plan or evaluation is applied to deny the plaintiff particular benefits or positions (e.g., a promotion or the award of a retirement pension). The issue can alternatively be framed as whether the *applications* of a discriminatory employment plan or evaluation constitute separate, cognizable discrim-

inatory *acts* under *Ricks*, or whether they are merely consequences of earlier discriminatory acts. In other words, can the statute of limitations start running before there is certainty that *any* adverse employment decision disadvantaging the plaintiff will result from the discrimination?

In the recent case of *Lorance v. AT & T Technologies, Inc.*, 827 F.2d 163 (7th Cir. 1987), the Seventh Circuit decided that the assignment of seniority status to an employee triggers that employee's statute of limitations on challenging the seniority system, even if the system is only later used to deny that employee a promotion. "[T]he relevant discriminatory act that triggers the period of limitations occurs at the time an employee *becomes subject* to a facially-neutral but discriminatory seniority system that the employee knows, or reasonably should know, is discriminatory." *Id.* at 167 (emphasis supplied). *Accord Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1057 (5th Cir.1979) (pre-*Ricks*). This reasoning would require employees to initiate Title VII actions as soon as they are made subject to a discriminatory seniority system. This often would occur as soon as they are hired or transferred into a new job catagory.

██ Most circuit courts have, however, rejected this analysis. They have reasoned, instead, that the application of a discriminatory system to a particular substantive decision (e.g., to promote, demote, fire, or award benefits) constitutes an independent discriminatory act which can trigger the commencement of the statute of limitations. For instance, in *EEOC v. Westinghouse Elec. Corp.*, 725 F.2d 211 (3d Cir.1984) (as amended), the Third Cir-

cuit ruled that after the formal promulgation of a discriminatory pension policy, a cause of action still "could not accrue until the discrimination *manifested itself* by virtue of the policy actually being *applied* to individual employees at the time of the plant closing through individual ... claim rejections." *Id.* at 219 (emphasis supplied). Because application of the policy was "contingent upon certain events, such as the closing of a plant," *id.* at 220 n. 5, the cause of action did not accrue until those events occurred. *Ricks* was distinguished on the ground that in *Ricks* "there was precise specificity as to the date of termination." *Id.* at 220.[1] Similarly, in *Crosland v. Charlotte Eye, Ear & Throat Hosp.*, 686 F.2d 208 (4th Cir.1982), the Fourth Circuit decided that an Age Discrimination in Employment Act (ADEA) claim did not accrue until the hospital "*finally decide[d]* claimant's status and benefit entitlement [at] her actual retirement." *Id.* at 212 (emphasis supplied).[2]

In an analogous Title VII case, the District of Columbia Circuit reasoned that although the preparation of an evaluation might have been a discriminatory act, a later screening panel's use of that discriminatory evaluation for purposes of a promotion decision is an alleged "unlawful discriminatory act in its own right." *Stoller v. Marsh*, 682 F.2d 971, 979 n. 10 (D.C.Cir. 1982). Thus, the statute began to run anew at the time that the original discriminatory evaluation was applied. *Id.* at 978–79. *See also Abrams v. Baylor College of Medicine*, 805 F.2d 528, 533 (5th Cir.1986) ("to establish a continuing violation [of Title VII], a plaintiff must show some *appli-*

---

1. It should be noted that the Supreme Court in *Ricks* explicitly left undecided whether Ricks' cause of action would accrue when the tenure decision itself was made known to him. Instead, the statute started running when he was informed that the denial of tenure would mean the loss of his job. 449 U.S. at 262 n. 17, 101 S.Ct. at 506 n. 17. Unlike the instant case, or the situation in *Westinghouse,* the alleged discriminatory act was final when Ricks was so informed of his pending dismissal, there being no foreseeable event other than appeal that would affect or change the discriminatory impact.

2. In a case decided before *Ricks,* the Sixth Circuit similarly held that the adoption of a discriminatory seniority system constitutes a "continuing violation" of the ADEA as long as that system is maintained by the employer. Thus, an employee's cause of action would not accrue "until his employment opportunities are adversely affected by the application to him of the provisions of that seniority system." *Morelock v. NCR Corp.*, 586 F.2d 1096, 1103 (6th Cir. 1978).

*cation of the illegal policy to him* (or to his class) within the 180 days preceding the filing of his complaint") (emphasis supplied).

We are persuaded by this line of cases. If the "notice" standard articulated in *Ricks* and in *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (per curiam), is extended to cases where none of the implications of an evaluation, policy, or system have crystallized, a cause of action could accrue only when the plaintiff becomes subject to the discrimination, rather than when the discrimination causes any harm to the employee. As the Seventh Circuit noted, there is a "paradox" in applying this notice standard literally;[3] it would require most employees to file suit as soon as they are hired on the job, because that is when they first are notified of the application of the system to them. *Heiar v. Crawford County,* 746 F.2d 1190, 1194 (7th Cir.1984). Such a requirement would be unreasonable, as well as undesirable from a public policy perspective.[4]

In addition, it is far from clear whether claims under Title VII and analogous statutes would be ripe for adjudication until discriminatory systems were actually *applied* to plaintiffs in particular employment decisions. In *Ricks,* the professor's claim undoubtedly was ripe as soon as he was notified of his imminent dismissal. But it is questionable whether an action by an employee who has not yet suffered any injury as a result of a discriminatory system is sufficiently ripe. *See Westinghouse,* 725 F.2d at 220. *See also Heiar,* 746 F.2d at 1194 ("courts would be deciding disputes prematurely"); *Lorance,* 827 F.2d at 168 (Cudahy, J., dissenting) ("majority's rule ... may encourage premature lawsuits"). It is unwise to encourage lawsuits before the injuries resulting from the violations are delineated, or before it is even certain that injuries will occur at all. A claim of conjectural future injury is much more poorly suited to adjudication than one in which the application of the discrimination and the injury caused thereby are more clearly established.

This court has addressed the *Ricks* issue only in the context of attempting to discern the definition of a "continuing violation." *See, e.g., Cajigas v. Banco de Ponce,* 741 F.2d 464, 469–70 (1st Cir.1984); *see also Velazquez v. Chardon,* 736 F.2d 831, 833 (1st Cir.1984) (no specific discussion of *Ricks* ). We have suggested that " 'if the statutory violation occurs as a result of a continuing policy, itself illegal, then the statute does not foreclose an action aimed at the company's enforcement of the policy within the limitations period.' " *Id.* at 833 (quoting *Perez v. Laredo Junior College,* 706 F.2d 731, 733–34 (5th Cir.1983)). Thus, we held that plaintiffs "must allege that a discriminatory act occurred or that a discriminatory policy existed" within the period prescribed by the statute. 736 F.2d at

---

**3.** Although the Seventh Circuit itself concluded that "no court has pressed the logic of the notice approach so relentlessly, or is likely to do so," *id.,* that very court later did, in *Lorance,* in fact adopt this "paradoxical" approach. The *Lorance* court did not cite its earlier analysis in *Heiar.*

**4.** *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), is not to the contrary. In that case, a female flight attendant was allegedly fired on the basis of her sex in 1968. When rehired in 1972, she was not given credit for seniority that would have accrued to her benefit had she not been dismissed four years earlier. The Court ruled that the only discriminatory act alleged was the firing in 1968. Because the 1972 seniority system was neutral as to the reasons why an employee had not been employed, the Court decided that plaintiff's injury was but a consequence of the earlier discriminatory act. *Evans* differs from the cases discussed in the text. Whereas in those cases a discriminatory classification or evaluation precedes a later separate actionable application of that classification to a particular decision, in *Evans* the discriminatory *application* led to unemployment, and the actual fact of unemployment caused the subsequent seniority placement. The latter decision was not itself discriminatory, because it was based on a mediating, *nondiscriminatory* "neutral" factor, namely, plaintiff's lack of continued service with the company. 431 U.S. at 558, 97 S.Ct. at 1889. By contrast, the employment decisions in the post-*Ricks* cases are made on the basis of the discriminatory classifications themselves, not on any "neutral" fact about the complainants. For further distinguishing of *Evans,* see *Cajigas v. Banco de Ponce,* 741 F.2d 464, 469–70 (1st Cir. 1984); *Stoller,* 682 F.2d at 978–79; *Lorance,* 827 F.2d at 168 (Cudahy, J., dissenting).

833 (emphasis supplied).[5] This language seems to permit a claim based on an application of a discriminatory policy within the allowed time period, even if a claim based on the original discriminatory act, the conferring of a general "classification" on the employee, would be barred by the statute of limitations.

In the case before us now, we are not presented with a "continuing" discriminatory "policy," as that concept is used in the cases cited above and in footnote 5. The issue before us is whether a "discriminatory act" occurred within the time mandated by the statute of limitations. The district court interpreted Count II of appellant's complaint to complain solely about the review *process* used to test the appellant. Much of the language of that count would seem to support this reading. Plaintiff complains in paragraph 22 that the process was "designed" to prevent him from qualifying for Senior Designer status. Paragraph 23 claims that the tests plaintiff was required to perform were unfair, and "designed to cause his failure."

But in paragraph 24, the plaintiff explicitly ties the unfair review process to notification of his failure and denial of promotion on February 24, 1982. (Earlier in his complaint, appellant also focused on the promotion denial in February in addition to the unfairness of the review process. Para. 11.) Thus, in the final paragraph of the count, plaintiff concludes that the process was unfair "as applied to the Plaintiff."

Reading the complaint, as we must, as a whole and in the light most favorable to the plaintiff, we cannot say that he is not complaining about the promotion denial in February in addition to the unfair review process the preceding summer. Even if the event in February is in some sense a "consequence" of the earlier discrimination, it is also alleged to be an independent discriminatory act in and of itself. The testers' alleged discriminatory animus becomes "background" material "which might make the [subsequent] decision [not to promote] discriminatory." *Stoller v. Marsh,* 682 F.2d 971, 978 (D.C.Cir.1982). *See also id.* at 978–79 (" 'The new direct use of the [previous discrimination] gives it fresh significance and should be treated as a new and independent act of discrimination.' " (quoting *Myles v. Schlesinger,* 436 F.Supp. 8, 15 n. 7 (E.D.Pa.1977)).

■ But even assuming that the review process itself constitutes the core of the alleged discrimination, it is not clear that that claim would have accrued until some tangible effects of the discrimination were apparent to the plaintiff. Until February, plaintiff did not know that the alleged unfair process would have any adverse effects whatsoever. Notice of *any* injury resulting from the adverse employment practice therefore did not occur until then. Neither *Ricks* nor any other Supreme Court case has held that the statute of limitations may start running before the plaintiff is aware that he will in fact be injured by the challenged practice. In this case, not only was there no adverse promotion decision on the basis of the test until after February 1982, plaintiff was not even unfairly classified until he was told that he had failed the test. He was merely allowed to be reviewed according to what he alleges to have been an unfair procedure.[6] If plaintiff *had* instituted his dis-

---

**5.** *See also Cook v. Pan American World Airways, Inc.,* 771 F.2d 635, 646 (2d Cir.1985) (claim accrues after "last act" of defendant "pursuant to" its "continuous policy of discrimination"); *Association Against Discrimination in Employment, Inc. v. Bridgeport,* 647 F.2d 256, 274 (2d Cir.1981) (same); *McKenzie v. Sawyer,* 684 F.2d 62, 72 (D.C.Cir.1982) (maintenance of discriminatory system or one of related acts must fall within limitations period); *Williams v. Owens–Illinois, Inc.,* 665 F.2d 918, 924–25 & n. 3 (9th Cir.1982) (attempting to distinguish between continuing discriminatory policies and continuing impact of discrete acts). These cases, along

with *Velazquez,* stand for the proposition that, although a discrimination claim might properly accrue when an employee is first classified according to a discriminatory policy or practice, the applications of that policy or practice to particular adverse decisions constitute independent acts of discrimination for which the clock starts to run anew.

**6.** Indeed, the injury here is far *more* speculative than that which might be expected to arise from the sort of discriminatory seniority system discussed in *Lorance.*

crimination claim in 1981, before the results of the test had been determined, it is likely that it would have been dismissed as unripe, since at that point it was undetermined whether the review process would in fact cause plaintiff any injury, or indeed, whether he would fail the review at all. February of 1982, then, seems to have been the *earliest* time at which appellant properly could have filed the action on Count II. That count therefore was not time-barred.

Nevertheless, appellant's complaint in Count II must be dismissed for failure to plead a Title VII violation with sufficient particularity. "Complaints based on civil rights statutes must do more than state simple conclusions; they must at least outline the facts constituting the alleged violation." *Fisher v. Flynn*, 598 F.2d 663, 665 (1st Cir.1979). Plaintiffs cannot be merely conclusory regarding the characterization of the defendant's motives; a subjective characterization of those motives will not suffice. *Id. See also Leonardo v. Moran*, 611 F.2d 397, 398 (1st Cir.1979). The plaintiff must allege a series of facts which at the very least gives rise to an inference of discriminatory animus. "It is not enough to allege a general scenario which could be dominated by unpleaded facts." *Dewey v. University of New Hampshire*, 694 F.2d 1, 3 (1st Cir.1982).

■ In order adequately to allege a prima facie Title VII claim of the sort complained of by appellant, a plaintiff need only assert that non-minority employees similarly situated or qualified were granted favorable treatment or benefits. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also McDonald v. Santa Fe Trail Trans. Co.*, 427 U.S. 273, 282–83 & n. 11, 96 S.Ct. 2574, 2579–80 & n. 11, 49 L.Ed.2d 493 (1976) (allegation of disparate treatment sufficient to plead inferential case that employer's nondiscriminatory explanation for dismissal is a pretext) (citing *McDonnell Douglas*). Plaintiff does allege in regard to Count I that he had qualifications equal to or better than the white employees promoted ahead of him. That count would have been sufficiently pleaded if it had been timely filed.

By contrast, the complaint alleges no specific facts that could lead a reasonable jury to infer that the review process, or the decision in February 1982 not to promote Johnson, was racially motivated. Plaintiff does not allege that the review process was waived for white employees who had similar qualifications. Plaintiff's complaint in Count II concerns the nature of the test, not its establishment. In fact, it seems as if the review process was established for the benefit of the plaintiff, so that he could prove his qualifications for the Senior Designer position after the defendant had previously determined that he was not so qualified. As to the discriminatory nature of the review process itself, plaintiff provides merely the conclusory allegation in paragraph 25 that the "artificial process was racially motivated and biased against the Plaintiff." Appellant has alleged facts which, if proven, might sustain a claim of an *unfair* review process. But that alone does not establish a Title VII violation. The element of racial discrimination must also be alleged with sufficient particularity. Plaintiff does not contend that any white employees were promoted without the qualifications for which the review process tested. Nor does he allege any other evidence of racial bias in the nature of the review. Appellant has not asserted facts sufficient to create inferences that would support a finding that he would have been treated differently had he not been black. *See Velazquez v. Chardon*, 736 F.2d 831, 834 (1st Cir.1984).[7]

---

7. This is hardly the only defect in appellant's complaint. It is impossible to discern with any degree of clarity what transpired to give appellant cause to complain. Appellant fails to allege why, if he was already qualified for the Senior Designer position, defendant insisted it was necessary for him to undergo further testing. There is no indication whether his "failure" meant that he was not qualified for any Senior Designer position, or whether it caused him to be passed over for a particular promotion opportunity. Most peculiarly, the review process established in July 1981 was supposed to last three months. We are told nothing about the results of that review. Instead, the complaint indicates that plaintiff failed a *second* review process

Appellant alleges in Count III that the defendant retaliated against him for filing his complaint with the EEOC in April 1982. The district court properly dismissed this count on the ground that the plaintiff had not adequately exhausted required EEOC procedures.

No claim may be brought in federal court unless the prerequisite of administrative investigation has first been met. A complaint related to that brought before the EEOC, but which was not itself made the subject of a separate EEOC complaint, must reasonably be expected to be have been within the scope of the EEOC's investigation in order to meet the jurisdictional prerequisite. *See, e.g., Miller v. International Tel. & Tel. Corp.,* 755 F.2d 20, 23–24 (2d Cir.1985). The retaliation claim here could not have been expected to be part of the scope of the EEOC's investigation growing out of appellant's earlier complaints, because plaintiff has not alleged that he even informed the EEOC of the alleged retaliation. *See Meyers v. Amerada Hess Corp.,* 647 F.Supp. 62, 67 (S.D.N.Y.1986).[8] Count III was therefore properly dismissed for failure to exhaust administrative procedures.

The decision of the district court dismissing appellant's complaint is *affirmed.*

---

some seven months later. Even under the liberal rules of notice pleading, appellant's complaint falls well short of the degree of specificity necessary to provide the defendant and the court proper notice of the wrongs alleged.

8. We need not decide whether we would have "ancillary" jurisdiction over the retaliation claim even in the absence of an EEOC complaint, *see Gottlieb v. Tulane Univ. of Louisiana,* 809 F.2d 278, 284 (5th Cir.1987); *Gupta v. East Texas State Univ.,* 654 F.2d 411 (5th Cir.1981), because with the dismissal of the remaining counts, there is no longer any federal court case to which the retaliation claim might be ancillary.