Herminio Cabezudo **PEREZ**, Maria Antonia **Perez**

v.

**AUTORIDAD de ENERGIA ELECTRICA de P.R. (PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA")); Carlos Alvarado, Director of the AEE; Board of Directors of the AEE, identified as Director A, Director B, Director C, Director D, Director E; Supervisor known as Mr. Elias; Supervisor known as Mr. X; District Manager No. 1, for the District which includes the town of Gurabo; Unidentified persons named here as person No. 1, No. 2, and No. 3.**

**Civ. No. 87–0004 (JP).**

United States District Court,
D. Puerto Rico.

June 27, 1990.

---

**1.** Of course, Maine law may be applied by either federal court.

Jeśus Hernández Sánchez, Santurce, P.R., for plaintiffs.

E. Vázquez Otero, Vázquez & Suárez, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it the parties' summary judgment motions on the issue of liability. This civil rights case arises under 42 U.S.C. § 1983. Plaintiffs allege that on November 17, 1986, representatives of Autoridad de Eneergía Eléctrica ("PREPA") climbed atop their home located in Barrio Rincón, Gurabo, to determine whether there was an illegal, unmetered electrical hookup. They claim that the search and the policy permitting the search violated their fourth amendment rights guaranteed by the Constitution of the United States. The named defendants include Ismael Jaimán Rivera and Justo Elías Rotger, the inspectors who climbed onto plaintiffs' roof, PREPA, Carlos Alvarado, Director of the PREPA Board of Directors, Lydia Félix de Santana, Miguel A. Rivera, Erasmo Rivera Lebrón, Jorge López Ramírez, and Modesto Iriarte, members of the PREPA Board of Directors. Plaintiffs request monetary damages, injunctive relief, and costs and attorney's fees.

Defendants argue that the complaint fails to adequately plead a § 1983 cause of action based on a fourth amendment violation, and that at most, the complaint states a trespass or slander cause of action. They also assert that the search was conducted by private, non-governmental individuals so that the fourth amendment guarantee against unreasonable searches is inapplicable to this case. Defendants further claim that the service contract between plaintiff Herminio Cabezudo and PREPA provided a consensual right of access to plaintiffs' roof so that no fourth amend-

ment right was implicated. Finally, defendants assert that no official policy or practice permitting PREPA employees to enter onto PREPA consumers' property has been established which would render the defendants liable for damages under section 1983. Even if such a policy were established, defendants claim they are entitled to qualified immunity because the validity or invalidity of the policy had not been determined and the officials administering the policy did not know and should not have known of its unconstitutionality prior to November 17, 1986.

The parties have agreed that the issue of liability shall be determined on cross-motions for Summary Judgment. For the reasons stated below, we grant summary judgment in favor of the defendants. All claims against PREPA and the PREPA Board members are therefore dismissed.

## I. FAILURE TO STATE A CLAIM

█ It is well settled in the First Circuit that a civil rights action must be specifically pleaded to withstand a motion to dismiss. *Johnson v. General Electric Co.*, 840 F.2d 132, 138 (1st Cir.1988); *Dewey v. New Hampshire*, 694 F.2d 1, 3 (1st Cir.1982), *cert. denied*, 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983). The plaintiff must plead the specific facts that give rise to an inference of unlawful discrimination. "It is not enough to allege a general scenario which could be dominated by unpleaded facts." *Johnson*, 840 F.2d at 138 (citation omitted). Thus, in a section 1983 case, the plaintiff must state the minimal facts of the alleged constitutional violation which occurred under color of state law.[1] *Dewey*, 694 F.2d at 3. In the instant case, plaintiffs have specifically pleaded the facts which constitute their § 1983 claim.[2]

█ The fourth amendment provides that, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." This amendment is enforceable against the states through the fourteenth amendment. *Ker v. California*, 374 U.S. 23, 30–31, 83 S.Ct. 1623, 1628, 10 L.Ed.2d 726, 736 (1963). Although the facts of this case involve an uncommon fourth amendment claim, the search of private property by employees of a public utility company rather than a police officer, the claim is still cognizable as a fourth amendment violation under section 1983: all searches conducted by state actors are limited by the fourth amendment, not just those carried out by law enforcement agencies. *New Jersey v. T.L.O.*, 469 U.S. 325, 336–37, 105 S.Ct. 733, 739–40, 83 L.Ed.2d 720 (1985). Moreover, from the beginning of our common law history, the fourth amendment has been applicable to all invasions of an individual's person, effect, and home, whether the invasion is classified as criminal or civil. *Hamrick v. Ashland Finance Co. of W. Va.*, 423 F.Supp. 1033, 1036 (S.D.W.Va.1976). *See also Cámara v. Municipal Court*, 387 U.S. 523, 530, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 930 (1967) (even though routine inspection of physical condition of private property was less hostile intrusion than typical police search for fruits of crime, community interest in municipal inspection programs was not superior to interests guaranteed by fourth amendment protection against official intrusion).

Defendants' assertion that the fourth amendment does not apply in this case because private individuals conducted the search without police participation is without merit. As we have pointed out earlier, *see* August 16, 1988 Opinion and Order,

---

**1.** The statute upon which plaintiffs base their complaint is 42 U.S.C. § 1983, which provides, in pertinent part, that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."

**2.** Although the case is submitted on cross-motions for summary judgment, defendants have renewed their motion to dismiss for failure to state a claim upon which relief can be granted. *See* October 11, 1988 Further Initial Scheduling Conference Order at 2.

PREPA is created by the government of Puerto Rico and is the exclusive provider of electricity services in Puerto Rico. As such, it is an instrumentality of the state, and any actions it or employees of it may take are therefore subject to the strictures of the fourth amendment. Also, the officials conducting the investigation were trying to determine whether plaintiffs were maintaining an illegal electrical connection. Thus, whether or not PREPA itself or the individual defendants in their official capacities can be held liable as "persons" under section 1983,[3] the officials conducting the investigation were subject to the fourth amendment proscriptions as their actions constituted "state action." *Cf.* S. Nahmod, *Civil Rights and Civil Liberties Litigation, the Law of Section 1983* § 2.04 (1986) (state action, necessary element of prima facie § 1983 cause of action, is easily found when state employee acting on behalf of state pursuant to state authority causes alleged constitutional deprivation). Therefore, plaintiffs have adequately stated a cause of action under 42 U.S.C. section 1983.

## II. FOURTH AMENDMENT VIOLATION

The main purpose of the fourth amendment is to safeguard the "privacy and security of individuals against arbitrary invasions by governmental officials ... [,]" *Cámara*, 387 U.S. at 528, 87 S.Ct. at 1730. Whether the fourth amendment has been violated in a particular case depends on whether the person asserting a fourth amendment right had a reasonable expectation of privacy in the places searched or the thing seized. *Alinovi v. Worcester School Committee*, 777 F.2d 776, 782 (1st Cir.1985) (citations omitted), *cert. denied*, 479 U.S. 816, 107 S.Ct. 72, 93 L.Ed.2d 29 (1986). *See also Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978). If a court concludes that the person asserting the fourth amendment right had no reasonable expectation of privacy, the fourth amendment does not apply and the official conduct in question does not constitute a search or seizure within the meaning of the fourth amendment. *See, e.g., California v. Ciraola*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986).

In *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967), the Supreme Court enunciated the basic constitutional rule that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the [f]ourth [a]mendment—subject only to a few specifically established and well-delineated exceptions." This category of exceptions to the warrant requirement includes: searches incident to a valid arrest, *Michigan v. DeFillippo*, 443 U.S. 31, 35, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343, 348 (1979); exigent circumstances, *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 298, 87 S.Ct. 1642, 1645, 18 L.Ed.2d 782, 787 (1967); automobile searches, *United States v. Chadwick*, 433 U.S. 1, 12, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538, 549 (1977); inventory searches, *South Dakota v. Opperman*, 428

---

**3.** In *Will v. Michigan Department of State Police*, — U.S. —, —, 109 S.Ct. 2304, 2307, 105 L.Ed.2d 45, 53 (1989), the Supreme Court ruled that notwithstanding eleventh amendment immunity, which only applies in federal court, a state is not a suable person within the meaning of 42 U.S.C. § 1983. Consequently, a state cannot be sued in its own name under § 1983 in federal or state court. *Id.* Also, state officials cannot be sued in their official capacities for damages either in federal court or in state court, because a suit against the official in his or her official capacity is not a suit against the official but rather a suit against the official's office. *Id.* at —, 109 S.Ct. at 2312, 105 L.Ed.2d at 59 (citing *Brandon v. Holt*, 469 U.S. 464, 471, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985)).

Therefore, in this case, both PREPA and the named PREPA officials cannot be sued as "persons" within the meaning of section 1983. Even though the named PREPA officials cannot be sued in their official capacities for money damages, they can be sued for prospective relief. *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985); *Ex Parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908). These codefendants can also be sued in their personal capacities for monetary relief. *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Litton Industries, Inc. v. Colón*, 587 F.2d 70 (1st Cir.1978).

 

U.S. 364, 375–76, 96 S.Ct. 3092, 3100–01, 49 L.Ed.2d 1000, 1009 (1976); consent searches, *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854, 860 (1973); and border searches, *United States v. Montoya de Hernández*, 473 U.S. 531, 541, 105 S.Ct. 3304, 3310, 87 L.Ed.2d 381, 391 (1985). *See generally* W. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment* §§ 5.1–10.11 (1987). If a search of private property without proper consent does not fall within the set of exceptions, the search is unreasonable unless a valid search warrant has been authorized. *Cámara*, 387 U.S. at 528–29, 87 S.Ct. at 1730–31 (citations omitted).

■ In this case, we conclude that plaintiffs had no reasonable expectation of privacy with regard to the PREPA officials conducting a routine check. The "General Terms and Conditions for the Supply of Electric Energy" ("Terms and Conditions") state the following:

> Right of Access—The customer is responsible to see that the meter is accessible to the Authority's meter readers. The customer shall permit the entrance to his premises, land, or property, to properly identified Authority employees for whatever purposes related to the service.

Therefore, plaintiffs could not reasonably expect to be free from routine investigations conducted by PREPA officials in furtherance of providing or maintaining electrical service to the plaintiffs, as specifically delineated in the terms and conditions for supply of that service.

The plaintiffs were on notice that the two employees who inspected the roof were from PREPA, because as defendants point out, they were wearing the PREPA uniforms and name tags and the motor vehicle they were using was also identified with the logo of the Authority. Defendants' Summary Judgment Motion at 2. Moreover, when plaintiff María Antonia Perez asked the two men who they were and what they were doing, they identified themselves as PREPA officials and informed the plaintiff of what they were doing. *See* Plaintiff's February 22, 1989 Motion for Partial Summary Judgment at 1.

■ Moreover, we conclude that the plaintiffs had previously consented to PREPA officials conducting routine monitoring of their meter so that even if the PREPA meter readers' entrance onto plaintiffs' roof was a "search" within the meaning of the Fourth Amendment, the search was reasonable because the plaintiffs consented to it. Defendants obtained plaintiffs' consent to enter onto their property because the consent was implicitly secured through the Terms and Conditions, which provide that the customers shall permit PREPA employees to enter their premises for whatever purposes related to providing electrical service.

In summary then, the plaintiffs had no reasonable expectation of privacy as to investigations conducted by the PREPA meter readers. Moreover, even if plaintiffs had such a reasonable expectation of privacy, they had previously consented to the entrance of defendants onto their property through the General Terms and Conditions for the Supply of Electrical Energy.

### III. CONCLUSION

Wherefore, in view of the foregoing, defendants' motion for summary judgment on the issue of liability is hereby GRANTED. The complaint is therefore dismissed.

Judgment shall be entered accordingly. IT IS SO ORDERED.

**UNITED STATES of America, Plaintiff,**

**v.**

**Ewart Mark HOLDER, Defendant.**

**Crim. No. 72–122 HL.**

United States District Court, D. Puerto Rico.

July 3, 1990.

Carlos A. Pérez, Asst. U.S. Atty., Hato Rey, P.R., for the U.S.

Patric D. O'Neill, from the firm of Martínez, Odell, Calabria & Sierra, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before this Court is Ewart Mark Holder's motion to reopen a Petition for Writ of Audita Querela, for relief from his 1974 conviction under 21 U.S.C. 952(a) for the importation of marihuana. After careful consideration of the petition, and the government's opposition, we deny the motion.

After having been dismissed for lack of jurisdiction in the District Court for the U.S. Virgin Islands, on June 21, 1990, the petition is properly before this Court where petitioner was convicted sixteen years ago. Petitioner is a citizen of Guyana. He seeks extraordinary relief from the consequences of his 1974 controlled substance conviction under a writ of audita querela. Specifically, he argues that the sixteen year-old judgment is impeding him from seeking permanent resident status in the United States.

*See* 8 U.S.C. 1182(a)(23). After having been granted numerous stays by the Immigration and Naturalization Service ("INS") and one stay by this Court, petitioner faces deportation to Guyana, on July 2, 1990.

■ The writ of audita querela may be available in a federal criminal case to obtain relief against the *consequences* of a prior judgment, and where a refusal to grant such relief would strip petitioner of access to newly created rights to which he would otherwise be clearly entitled to by operation of law. *See United States v. Ayala*, 894 F.2d 425 (D.C.Cir.1990); *United States v. Kimberlin*, 675 F.2d 866, 869 (7th Cir.1982); *U.S. v. Salgado*, 692 F.Supp. 1265, 1269 (E.D.Wash.1988).[1]

■ We have scrutinized petitioner's motion for relief and affidavit, and cannot find any facts to show that a right to permanent resident status has been newly created since his conviction in 1974. He has not argued that the Immigration Reform and Control Act of 1986 ("IRCA") provided him a new avenue or abolished a former obstacle for becoming a citizen that was not present in 1974. *See Salgado*, .692 F.Supp. at 1270. A drug conviction has the same preclusive effect on permanent legal resident status now as it did at the time of petitioner's conviction.

Furthermore, the fact that the conviction bars petitioner from seeking permanent resident status does not constitute a "defense" or "discharge" to the prior convic-

tion. *U.S. v. Acholonu*, 717 F.Supp. 709, 710 (D.Nev.1989). There is no "increase in the collateral consequences of a conviction" that might have affected the sentence the petitioner received, nor does it go to the merits of the offense charged. *Acholonu*, 717 F.Supp. at 710. We can find no facts in the petition which would lead us to believe the indictment would have been dismissed or the sentence reduced, had the permanent status requirements been considered at the time of conviction. *Acholonu*, 717 F.Supp. at 710. Petitioner merely states in his affidavit that he was "unaware" in 1973 that a conviction could have a detrimental effect on his ability to travel to the U.S.[2] He does not establish that a right to permanent status was created after 1974 which would entitle him to residency if not for the conviction.

■ Furthermore, we cannot conclude from the facts presented that justice demands that the conviction be vacated. While he testifies that he married a U.S. citizen in 1981, subsequent to his conviction; that he has been residing in the United States since his conviction; and that he has college-age children who are U.S. citizens, there is no evidence that his family depends on him for financial support or the like. There are no extraordinary circumstances of health, safety or loss of family benefits which would justify our interfering with the enforcement proceedings of the INS.[3]

---

1. The Supreme Court has not spoken on the availability of the writ of audita querela after Fed.R.Civ.P. 60(b) became available for post-conviction relief. The most recent appellate court opinion to date, *U.S. v. Ayala*, 894 F.2d 425, expounded on the writ's history and cast doubt on its availability for a criminal defendant, although the Court left the question unresolved. *Ayala*, 894 F.2d at 430. Rather, the Court stated:

    The Supreme Court's decision in *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), makes clear that a federal court can vacate a criminal conviction pursuant to the common law writ of audita querela only if the writ permits a defendant to raise a legal objection not cognizable under existing federal post-conviction remedies. *Id.*

2. Petitioner's affidavit states that the sentencing judge questioned the probation officer about

deportation, and the officer replied: "It's up to Immigration." Indeed, the INS has jurisdiction of deportation proceedings, and neither this Court nor any other will interfere with such proceedings without the requisite showing for extraordinary relief. We find petitioner has not met such burden.

3. In a second emergency motion seeking equitable relief filed on the eve of deportation, petitioner submitted evidence that he had a medical appointment at Howard University Hospital on July 11, 1990 which justifies a stay of deportation. Evaluation of the merits of such evidence is for the INS. It does not constitute evidence supporting relief from *conviction*. There is additional evidence in the record of INS's denial of petitioner's request for an additional stay due to the appointment. This written denial is sufficient for this Court to conclude the appointment has been duly considered

in the deportation proceedings. *See* Exhibits C and D of Emergency Motion.